494 A.2d 200

**Anna Lee KEYS**

v.

**CHRYSLER CREDIT CORPORATION et al.**

**No. 139, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 28, 1985.

Alex S. Katzenberg, III, Baltimore (Gee M. Cohen and Cohen, Snyder, McClellan, Eisenberg & Katzenberg, P.A., Baltimore, on brief), for appellant.

Patricia M. Flannery, Baltimore (Frank J. Vecella and Anderson, Coe & King, Baltimore, on brief), for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY, McAULIFFE, JJ. and CHARLES E. ORTH, Jr. (Retired, Specially Assigned), Associate Judge of the Court of Appeals of Maryland.

McAULIFFE, Judge.

In November of 1981 Appellant suffered the attachment of her wages by a writ of garnishment issued to enforce payment of a judgment she had fully satisfied more than four years before. For this indignity and alleged damage to her reputation and credit she brought suit against the creditor and its attorney, and we must now determine whether her proof was sufficient to establish a prima facie case in each of the four causes of action sued upon.

In 1971 Chrysler Credit Corporation, represented by N. Frank Lanocha, Esquire, obtained a judgment against Anna

Lee Keys and her husband in the District Court of Maryland for Baltimore City. During the period 1972–74 Chrysler levied upon the real property of the Keys, and caused to be issued the writ of *fieri facias* for personal property as well as five garnishments against Appellant's wages, all apparently without success. In October of 1977 the Keys sold their home, and the outstanding balance of Chrysler's judgment, including attorney's fees and costs, was paid in full from the proceeds of sale. Payment was made by the settlement attorney directly to Chrysler, and there is no indication that Lanocha was involved. However, on November 16, 1977 a document captioned "Order of Satisfaction" and signed by Lanocha as attorney for Chrysler was filed in the action, directing the clerk to enter the judgment "satisfied." On the same day the clerk of the District Court made an entry on the docket of "Agreed and Settled."

On August 25, 1981 Lanocha filed in the same case a request for writ of attachment of Appellant's wages, stating as a part of his request that the sum of $2,068.61 was currently due on the judgment. The writ[1] was issued on November 12, and served on Appellant's employer, Chesapeake and Potomac Telephone Company of Maryland, several days later. On November 18, Appellant was advised of the attachment by Ray Culbertson, her supervisor. According to Appellant she was working in a large room with approximately 40 other employees, some of whom she supervised, when Mr. Culbertson approached her desk and in a normal conversational voice informed her that her wages for the week ending November 14th had been attached by Chrysler. Appellant testified that a number of co-employees were in very close proximity to her when her supervisor advised her of the attachment, and that some of them

---

1. The form of writ of attachment on wages approved for use in the District Court and used in this case contains the request, a statement of amount due, the writ, instructions to the garnishee, and the garnishee's report of employment.

stopped working when they heard what he was saying to her.

On the same day Appellant called Lanocha and told him the judgment had been paid in 1977. Lanocha responded that his records did not indicate payment, but that "he would check into it." Appellant contacted her attorney, G.M. Cohen, on the following day, and on November 20, Cohen called Lanocha to demand that the error be corrected. Later that same day Lanocha called another of Appellant's attorneys, a Mr. Katzenberg, to acknowledge his error and to advise that he would act immediately to effect a reimbursement of the attached wages.

Appellant's wages for the week ending November 21, were also affected by the continuing garnishment, and she was advised of this by Mr. Culbertson on November 25, apparently in the same manner as before. A co-worker testified she had overheard Mr. Culbertson telling Appellant of the effect of the attachment on November 25, and that she had observed Appellant to be upset and crying a short time thereafter. Later the same day Appellant's employer authorized release of the attached wages to her, pursuant to a notice of dismissal of the attachment that had been forwarded by Lanocha and apparently received by the employer on November 24th. Appellant received the wages that had been attached within several days of November 25th.

Appellant brought this action against Chrysler and Lanocha, including one count of defamation against Chrysler and two counts each of malicious use of process, abuse of process, and conversion against Chrysler and Lanocha. Following the presentation of Appellant's evidence at a jury trial in the Circuit Court for Baltimore City, Judge David G. Mitchell granted motions for judgment on behalf of the defendants on all counts. A timely appeal was taken to the Court of Special Appeals and we granted certiorari, 302 Md. 192, 486 A.2d 205 (1985) on our own motion before consideration of the case by that court. We will consider the

contentions of the parties as to each of the several causes of action involved.

## I  DEFAMATION

Appellant's action against Chrysler alleges that the writ of attachment defamed her because it included a false statement that she owed an outstanding judgment. This, she reasons, suggested a refusal or failure to pay her honest debts and therefore reflected adversely on her credit or character. Furthermore, she contends Chrysler is liable for the republication of this untruth by her employer.

Because we agree with the trial judge's determination that statements contained in the writ were protected by an absolute privilege against an action for defamation we affirm the entry of a judgment for Chrysler on this count, and we do not reach the question of whether a statement that a person has not paid or refuses to pay a lawful debt would be defamatory under the facts of this case.[2] For the same reason, and for the additional reason that the question was not raised by the parties, we do not decide whether the issuance of a writ may constitute the original publication of a libel and subject the requesting party to liability for defamation.[3]

At least since 1888, when this Court decided *Hunckel v. Voneiff*, 69 Md. 179, 14 A. 500 (1888) and *Bartlett v. Christhilf*, 69 Md. 219, 14 A. 518 (1888), we have recognized the existence of an absolute privilege for defamatory statements uttered in the course of a trial or contained in

---

2. *See Stannard v. Wilcox & Gibbs,* 118 Md. 151, 84 A. 335 (1912). And, *see generally Metromedia, Inc. v. Hillman,* 285 Md. 161, 400 A.2d 1117 (1979) for a discussion of the current law of defamation in this State.

3. In *Global Van Lines, Inc. v. Kleinow,* 411 A.2d 62, 64 (D.C.1980) the District of Columbia Court of Appeals held that a litigant was not liable for documents issued by a court. A different result might obtain in the case before us because the form of the writ also includes the signed certification by Appellee's counsel that the judgment remains unpaid.

pleadings, affidavits or other documents directly related to the case. This privilege operates in favor of the judge, as well as the witnesses, counsel, and parties to the litigation. Our interpretation of the privilege has consistently been broad and comprehensive in recognition of the sound policy announced in *Bartlett, supra,* 69 Md. at 226: to foster "the free and unfettered administration of justice." We accepted the minority or "English" rule which afforded the absolute privilege to witnesses and parties without the necessity of demonstrating the relevance of the statement to the pending litigation. *See Korb v. Kowaleviocz,* 285 Md. 699, 402 A.2d 897 (1979). In *Adams v. Peck,* 288 Md. 1, 415 A.2d 292 (1980) we approved the application of an absolute privilege to a defamatory statement published in a document prepared for possible use in connection with a pending judicial proceeding, even though not filed in the proceeding. And, in *Gersh v. Ambrose,* 291 Md. 188, 434 A.2d 547 (1981) we said that the absolute privilege may be extended to witnesses testifying in certain types of administrative proceedings. We do not here retreat from the broad view we have taken of the necessary scope and effect of this important privilege.

Appellant suggests the privilege should not apply because the litigation had ended on November 16, 1977 with the filing of the praecipe signed by Lanocha and directing the Clerk of the District Court to enter the judgment "satisfied." She cites in support of that contention *Burlingame v. Burlingame,* 8 Cow. 141 (N.Y.1828) wherein suit had been brought for defamation following defendant's statement that plaintiff had been involved in bovine bestiality, *i.e.,* "connexion with the defendant's cow." The plaintiff had been charged with a crime against nature, but had been acquitted of the charge. Because the statement upon which the action was based was made after the hearing and acquittal, it was held to be outside the scope of the privilege.

We conclude that *Burlingame* has no application to the facts of this case. Here, the alleged defamatory communi-

cation was made in and as a part of a District Court action. In *Burlingame,* the statement was not made as a part of the case, but was an editorial comment offered after the conclusion of the trial.

■ That is not to say that the rendition of a verdict or the entry of a judgment forever terminates the privilege. Quite to the contrary, if a post trial motion is filed, and affidavits are received or testimony is taken with respect thereto, the privilege would apply to the pleadings, affidavits and testimony. Similarly, an attachment issued to enforce a final judgment may precipitate extensive additional proceedings involving the original parties as well as a garnishee, and those proceedings will enjoy the protection of the privilege even though occurring in a case in which the judgment had become final. Even when a judgment has been entered satisfied, and more than 30 days has passed, additional proceedings will be required if a motion to strike or to withdraw the order of satisfaction is filed, alleging fraud, mistake or irregularity.

■ In the case before us, the litigation was resuscitated by the filing of a request for the issuance of a writ of attachment which included a statement by Chrysler's attorney that the judgment had not been paid and that $2,068.61 was still due to Chrysler. As it turns out, this statement was in error, and the judgment had in fact been paid, but neither error contained in the statement that revived the litigation nor error on the part of the court in allowing it to be revived will defeat the privilege as to defamation when the statements and pleadings were in fact a part of a judicial process.

In *Gore v. Condon,* 87 Md. 368, 39 A. 1042 (1898) the defendant advertised plaintiff's property for sale under an *ex parte* decree of foreclosure on a mortgage even though he knew the mortgage was fraudulent and that he had obtained it from a person whom he knew not to be the owner. This Court held that an action on the case would lie for wrongful interference with the property of the plain-

tiff[4] but that no action could be brought for damage to the reputation of the claimant because:

> [i]t is well settled that no action will lie for words spoken or written in the course of giving evidence or for words spoken or written in the course of any judicial proceeding. *Id.* at 377, 39 A. 1042 [citation omitted].

■ Thus, even the intentional and wrongful bringing or maintaining of litigation will not destroy the absolute privilege that attends the litigation, and a cause of action other than defamation must be employed to redress such a wrong.

While we have spoken of the continuation or resuscitation of litigation in the context of this case, the result would be the same if we consider the service of a writ of attachment by garnishment as generating a new action. Historically, a new case was created by the clerk each time a garnishee was served, because the issues and some of the parties were separate from the underlying action. Although the procedure has changed and garnishment proceedings now remain in the original case file,[5] the essential character of a separate action is not lost. Maryland Rule 2–645(g) dealing with garnishment of property in general, provides in pertinent part:

> If a timely reply is filed to the answer of the garnishee, the matter shall proceed as if it were an original action between the judgment creditor as plaintiff and the garnishee as defendant and shall be governed by the rules applicable to civil actions.

---

**4.** This action was held to be in the nature of a conversion. In addition, our predecessors indicated that an action for malicious prosecution might also have been appropriate.

**5.** Filing of the attachment and the underlying claim in the same case was first required for attachments on original process. *See* Maryland Rule 1140(d) effective January 1, 1959, and Maryland Rule G43 effective January 1, 1962. Currently, *see* Maryland Rule 2–115(b). The same procedure was generally followed for garnishment of the property of a judgment debtor, and is now required by Maryland Rules 2–645(b) and 2–646(b).

Maryland Rule 2–646, dealing with garnishment of wages, is not as explicit but provides generally for the same type of additional proceedings. If the garnishment is treated as creating a new action it is clear that the privilege attaches, even though the attachment may be wrongfully or maliciously obtained. We conclude that the trial judge correctly granted Chrysler's motion for judgment as to the defamation count.

## II  MALICIOUS USE OF PROCESS

The elements of the cause of action of malicious use · of process are:

1. A prior civil proceeding was instituted by the defendant.

2. The proceeding was instituted without probable cause.

3. The proceeding was instituted with malice.

4. The proceeding terminated in favor of the plaintiff.

5. Damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action. *Wesko v. G.E.M., Inc.,* 272 Md. 192, 321 A.2d 529 (1974); *Siegman v. Equitable Trust Co.,* 267 Md. 309, 297 A.2d 758 (1972); *Walker v. American Security Co.,* 237 Md. 80, 205 A.2d 302 (1964); *Shamberger v. Dessel,* 236 Md. 318, 204 A.2d 68 (1964); *Owens v. Graetzel,* 149 Md. 689, 132 A. 265 (1926); *Supreme Lodge, Etc. v. Unverzagt,* 76 Md. 104, 24 A. 323 (1892); *McNamee v. Minke,* 49 Md. 122 (1878).

The trial judge determined, and the parties agree, that Appellant's evidence was sufficient to permit the trier of fact to conclude that the first, second and fourth elements had been proven. Judge Mitchell granted Appellees' motion for judgment on this count because he found the evidence insufficient to permit a finding of malice, as required by the third element. Because of this finding, Judge Mitchell did not consider the legal sufficiency of the evidence to prove

the requisite damages, and Chrysler here argues that this evidence was also insufficient.

■ We conclude the evidence was sufficient to permit the trier of fact to find the existence of all elements of this cause of action.

■ When Appellees moved for judgment at the end of Appellant's case, Judge Mitchell was obliged to "consider all evidence and inferences in the light most favorable" to Appellant. Maryland Rule 2–519(b). That evidence demonstrated the issuance of an attachment by Appellees [6] when the judgment had been paid in full, and therefore the initiation of a proceeding without probable cause. From the lack of probable cause, the jury could have inferred the existence of malice.[7] In addition, the evidence disclosed that both Appellees had received actual notice of the payment of the judgment before the issuance of the writ, and the jury could have inferred an improper motive from that fact.

Appellees argue that within Appellant's case there was sufficient evidence of innocent oversight or "clerical error" to prevent a finding of malice. They correctly cite *Wesko* as authority for the proposition that a plaintiff may be bound by testimony offered in his case, and where that testimony is uncontradicted and completely negates the existence of malice the plaintiff will not have made out a cause of action of malicious use of process. The facts of *Wesko*, while strikingly similar in some respects, are distinguishable from the facts of the case before us in important

---

**6.** Chrysler apparently denies that Lanocha was acting as its authorized agent when he directed the issuance of the attachment, but concedes the evidence was sufficient at this point in the trial to allow a jury to find liability on the part of Chrysler.

**7.** Malice in this context means that the party was actuated by an improper motive, and proof of malice does not require evidence of spite, hatred, personal enmity or a desire for revenge. *Exxon Corp. v. Kelly*, 281 Md. 689, 700, 381 A.2d 1146 (1978); *Johns v. Marsh*, 52 Md. 323, 332–33 (1879).

and dispositive particulars. In *Wesko,* as here, the defendant caused the attachment of a party's wages in execution of a judgment that had previously been paid in full. Unlike the instant case, however, the plaintiff in *Wesko* called as his own witness the attorney who had caused the wrongful attachment to issue, and called as an adverse witness the defendant's division credit manager. Both of these witnesses testified that the issuance of the writ of attachment was the result of a clerical mistake, and was not actuated by any improper motive or purpose. That testimony was not contradicted by any other evidence in the plaintiff's case, and the plaintiff was bound by it. We therefore held that the plaintiff had effectively negated any possibility that malice could be inferred from want of probable cause, and that as a result the judgment n.o.v. entered in favor of the defendant was appropriate. For a similar holding, *see Delisi v. Garnett,* 257 Md. 4, 261 A.2d 784 (1970).

In the instant case, Appellant did not call as her witness either Lanocha or any representative of Chrysler. Appellees rely on testimony elicited during the cross examination of Appellant, to the effect that Lanocha had told her during a "rather pleasant" telephone conversation immediately following notice of the attachment that he "could not understand, because [his] file indicated it was still open" and that he would "check into it." This testimony, while helpful to the Appellees, did not offer uncontradicted affirmative evidence of the existence of a clerical mistake sufficient to negate as a matter of law the inference of malice which could have arisen from Appellant's other evidence. *See Exxon Corp. v. Kelly, supra,* 281 Md. at 689, 381 A.2d 1146; *Durante v. Braun,* 263 Md. 685, 284 A.2d 241 (1971); *Jannenga v. Libernini,* 222 Md. 469, 160 A.2d 795 (1960).

Chrysler also contends that in order to sustain this action there must be evidence of special injury or damage in addition to a showing of a seizure of property. In *North Pt. Constr. Co. v. Sagner,* 185 Md. 200, 207, 44 A.2d 441 (1945) this Court said:

Regardless of the attitude of the courts of other jurisdictions, concerning which there is much conflict, and regardless of the contrary view indicated in *Restatement —Torts*, Vol. 3, page 442, Maryland has steadfastly adhered to the so-called "English" rule that no action will lie for the malicious prosecution of a civil suit when there has been no arrest of the person, no seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action....

The mere expense and annoyance of defending a civil action is not a sufficient special damage or injury to sustain an action for malicious prosecution. (Citations omitted).

Any ambiguity in that statement of the rule is resolved by reference to the earlier case of *Owens v. Graetzel, supra,* 149 Md. at 695, 132 A. 265, where we said:

While it is recognized that the appellate courts of the jurisdictions in the United States are in conflict, yet it is unnecessary for us to determine the weight of authority, because this tribunal early and steadfastly has held that no action will lie for the institution and prosecution of a civil action with malice and without probable cause, when there has been no arrest of the person nor seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action, *but that the action will lie wherever the defendant in the malicious suit has been deprived of his personal liberty, or of the possession, use or enjoyment of property.* (Citations omitted). (Emphasis supplied).

Appellant proved the attachment of a portion of her wages for a period of time, and this constitutes proof of deprivation of the use and possession of her property.

Accordingly, the trial judge erred in granting the Appellees' motion for judgment as to this cause of action and we reverse.

## III ABUSE OF PROCESS

■ In *Walker v. American Security & Trust Co.*, 237 Md. 80, 87, 205 A.2d 302 (1964) Judge Horney said for the Court:

> A tort action for abuse of process, on the one hand, and the tort actions for malicious prosecution and malicious use of process, on the other hand, are essentially different and independent actions. An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause. (Citations omitted).

In *Krashes v. White*, 275 Md. 549, 555, 341 A.2d 798 (1975) we said:

> The tort of abuse of process occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law. (Citations omitted).

As we discussed in Part II, *supra*, the jury was free to infer the presence of an ulterior motive from the action of Appellees in causing the issuance of an attachment upon a judgment which they knew to have been previously paid in full. There remains for consideration the question of whether there was evidence of any improper use of the process *after* its issuance. An identical question was considered in *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 513–14, 471 A.2d 297 (1984). There, the evidence was found to be sufficient because it permitted a finding that the defendant, after the issuance of criminal process, had made a demand

of civil payment coupled with a statement that the plaintiff would "go to jail" if the debt were not paid.

In the instant case, however, there is no evidence of any improper use or perversion of the process after it was issued. Appellant's proper complaint in this case is with the issuance of the process, for which she has a cause of action, and she has no proper proof of an abuse of process. The language of *Bartlett v. Christhilf, supra,* 69 Md. at 230–31, 14 A. 518 is apposite:

> The allegations of the count impeach the good faith of the proceedings which culminated in the order. They do not show any abuse of the order when issued. If the order was procured maliciously, falsely and without probable cause, that circumstance would furnish no ground for holding that the regular and proper service of the order amounted to a malicious abuse of the process of the court. The manner of obtaining the order is quite a different thing from the manner of executing it, when obtained. Or in the language of Bosanquet, J., in *Grainger v. Hill,* [4 Bing. N.C. 212], "the action is not for maliciously putting process in force; but for maliciously abusing the process of the court."

*See also Herring v. Citizens Bank & T. Co.,* 21 Md.App. 517, 528–37, 321 A.2d 182, 87 A.L.R.3d 527 (1974). *Compare Restatement (Second) of Torts* § 682 (1977).

Judgment was correctly entered against Appellant on all counts alleging abuse of process.

## IV   CONVERSION

■ Appellees' motion for judgment on each conversion count was granted because the trial judge believed conversion was a "direct offshoot and outflow of the legal proceedings that have a privilege." The question of the existence of a privilege to interfere with persons or property pursuant to judicial process is most often considered in connection with the liability of public officers. W. Keeton, *Prosser & Keeton on Torts,* § 25 (5th ed. 1984), but has

application as well to the liability of parties and attorneys who direct the issuance or service of the process. 1 J. Poe, *Pleading & Practice at Law,* Pl. §§ 498–506 (4th ed. 1969); 1 J. Poe, *Pleading & Practice at Law,* Pl. §§ 236–38 (4th ed. 1969); *Richardson v. Hall,* 21 Md. 399 (1864). A general privilege applies to an attachment issued upon a judgment regularly entered by a court of competent jurisdiction, even though the judgment may later be set aside or reversed because of error on the part of the judge. However, where the court is without jurisdiction to enter judgment, or the proceedings are entirely void, or property other than that of the judgment debtor is seized, there is no privilege. And, in *dictum* in *Deal v. Harris,* 8 Md. 40, 43 (1855) this Court indicated the privilege would not apply to an attachment issued in execution of a judgment that had been rescinded or paid:

It is said, however, in *1 Chitty's Pl. 181, (Ed.1851:)* "In general no action whatever can be supported for any act, however *erroneous,* if expressly sanctioned by the judgment or direction of one of the superior courts at Westminster, or even by an inferior magistrate, acting within the scope of his jurisdiction." Notwithstanding there may be exceptions to the general rule thus stated, yet it is certainly true, that if the inferior judge has jurisdiction, although he may give a wrong judgment, provided the error results from the erroneous conclusion at which he arrives, neither the judge nor the plaintiff in the judgment can be made a trespasser, by virtue of enforcing the same, if the *judgment remains unrescinded and unpaid.* (Citations omitted). (Last emphasis supplied).

We now specifically hold that the privilege will not attach to protect a party or attorney sued for trespass or conversion as a result of damage caused by the intentional issuance of an attachment upon a previously paid judgment.

As Appellees now concede, conversion is an independent tort, and is not subsumed within the tort of malicious use of process. Although the tort of conversion may

take several forms, we here deal with a claim that Appellees wrongfully deprived Appellant of the use of her wages for a period of time.[8] Conversion is an intentional tort, but the intent that must be shown does not necessarily involve an improper motive.

> The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. A purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since the auctioneer's acts are an interference with the control of the property. A mistake of law or fact is no defense. "Persons deal with the property in chattels or exercise acts of ownership over them at their peril," [citing Cleasby, B., in *Hollins v. Fowler*, 1874, L.R. 7 Q.B. 639] and must take the risk that there is no lawful justification for their acts. W. Keeton, *Prosser & Keeton on Torts, supra*, § 15 (footnotes omitted).

Thus, if Appellant is able to prove a conversion she will be entitled to appropriate damages, even though the jury may fail to find an improper motive necessary to sustain an action for malicious use of process.

In determining whether there was any other ground to support the entry of judgment for Appellees on this count, we examine their contention that the interference with Appellant's wages was at most a trespass, and not of so serious a character as to amount to a conversion.[9]

---

**8.** In *Kirby v. Porter*, 144 Md. 261, 266, 125 A. 41 (1923), we made it clear that conversion may consist of the wrongful deprivation of the use of goods, and it is not necessary to show a conversion to the use of the defendant.

**9.** Because it was not raised below or before us, we do not address the question of whether wages, or the right to receive wages, may be the subject of a claim of conversion. *See Maryland Casualty Co. v. Wolff*, 180 Md. 513, 515, 25 A.2d 665 (1942) and *Davin v. Dowling*, 146 Wash. 137, 262 P. 123, 125 (1927). *See also* W. Keeton, *Prosser & Keeton on Torts, supra*, § 15; Annot., 44 A.L.R.2d 927 § 7 (1955).

[T]he tort of conversion has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action. Trespass remains as an occasional remedy for minor interferences, resulting in some damage, but not sufficiently serious or sufficiently important to amount to the greater tort. In determining the seriousness of the interference, and the justice of requiring the defendant to pay the full value, all of the relevant factors in the case are to be considered. These include the extent and duration of the defendant's exercise of control over the chattel; his intent to assert a right which is in fact inconsistent with the plaintiff's right of control; the defendant's good faith or bad intentions; the extent and duration of the resulting interference with the plaintiff's right of control; the harm done to the chattel; and the expense and inconvenience caused to the plaintiff. W. Keeton, *Prosser & Keeton on Torts, supra,* § 15 (footnotes omitted).

*See also Restatement (Second) of Torts* § 222A (1965). Appellant suffered loss of the use of a part of her wages for more than a week, and there is evidence from which the jury could find that the detention was malicious. The duration of the deprivation is but one element to be considered, and in *Kirby, supra,* 144 Md. at 261, 125 A. 41, detention of plaintiff's furniture for one day was found to constitute a conversion. We conclude the evidence was sufficient to permit the jury to find an interference of sufficient seriousness to amount to a conversion.

Lastly, Appellees argue the absence of any legally sufficient evidence of damages flowing from the conversion of Appellant's wages. The measure of damages in an action for conversion of personal property is the fair market value of the property at the time of conversion, with legal interest thereon to the date of the verdict. *Checkpoint v. Sweeney,* 250 Md. 251, 253, 242 A.2d 148 (1968); *Saunders v. Mullinix,* 195 Md. 235, 240, 72 A.2d 720 (1950). In this

case, however, Appellant accepted the detained wages, and we conclude the amount of damages must be diminished accordingly. *Restatement (Second) of Torts* § 922(1) (1979). Because the value of the property detained was the same upon its return, the measure of damages in this case would be limited to the loss of use of the property. Although Appellant offered no evidence of the damage she suffered from the loss of use of these wages, the jury could have found at least the loss of interest thereon, and Appellant would have been entitled to a jury instruction informing the jury of the legal rate of interest prevailing at the time of the wrong. With that information, the jury properly could have calculated an award of damages.

## CONCLUSION

The trial judge correctly granted Appellees' motion for judgment on the counts claiming defamation and abuse of process, but erred in granting the motion as to the counts of malicious use of process and conversion.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION; COSTS TO ABIDE THE RESULT.