694 A.2d 952

**ONE THOUSAND FLEET LIMITED PARTNERSHIP**

v.

**John GUERRIERO et al.**

**No. 54, Sept. Term, 1996.**

Court of Appeals of Maryland.

June 12, 1997

Neil J. Ruther, Baltimore, for appellant.

Harry Levy, Robert B. Schulman, Andrew H. Levine, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore; Gerald R. Walsh (Gerald R. Walsh, P.A.; Richard B. Stofberg, Law Offices of Arthur Drager, all on briefs), Baltimore, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RAKER, Judge.

This appeal involves the torts of malicious use of process and abuse of process. We must decide whether Appellant One Thousand Fleet Limited Partnership may maintain suit for malicious use of process and abuse of process against Appellees John Guerriero, Richard Ingrao, and the Little Italy Community Organization based on lawsuits filed by Ingrao and the Little Italy Community Organization challenging the zoning modification and issuance of building permits for a real estate development project undertaken by Appellant in Baltimore's Little Italy neighborhood. The Circuit Court for Baltimore City dismissed Appellant's two-count complaint against Appellees. We shall affirm.

## The Parties

Appellant One Thousand Fleet Limited Partnership ("Fleet") is a Maryland limited partnership engaged in real estate development in Baltimore City. Appellee John Guerriero is a property owner in Baltimore's Little Italy neighborhood. Appellee Richard Ingrao is also a property owner in Little Italy and, at the time of most of the events in question here, was president of the Little Italy Community Organization ("Community Organization"). The Community Organization, also an appellee, is a non-profit corporation formed to further the interests of the residents and businesses of the Little Italy neighborhood.

## The Project

In the summer of 1992, Fleet began negotiations to purchase an abandoned furniture warehouse, the Bagby Furniture building, located at 509–521 South Exeter Street in Baltimore City. Fleet intended to convert the building to an apartment building containing fifty-seven apartments. The Community Organization initially supported the project. In a letter dated March 15, 1993, Ingrao, on behalf of the Commu-

nity Organization, wrote a letter to Fleet's predecessor[1] informing Fleet that "[t]he community overwhelmingly approved the conversion of the building into 56 apartment units."[2] The letter contained certain Community Organization demands concerning parking, the height of the building, the management of the property, and the zoning modifications that Fleet would be required to obtain.

On April 1, 1993, Fleet reached an agreement of sale with the owners of the Bagby Furniture building to purchase the building for one million dollars. In order to develop the property as an apartment building, it was necessary to obtain a rezoning of the property from heavy industrial to a residential classification. The Mayor and City Council of Baltimore approved the zoning change on July 2, 1993. Fleet also applied for conditional use authority from the Board of Municipal and Zoning Appeals ("the Board") of the City of Baltimore. Conditional use authority from the Board was necessary in order to use the building as apartments. The Board approved the conditional use authority on November 30, 1993.

After it cleared the zoning hurdles, Fleet sought and received financial commitments for the project from various federal, state, and local entities. As a condition of state and

---

1. Fleet's predecessor was Henrietta Corporation. The letter from the Community Organization, dated March 15, 1993, is addressed to "Patrick Turner, Henrietta Corporation." One Thousand Fleet Limited Partnership was formed sometime between March, 1993, and when Fleet applied to the Board of Municipal and Zoning Appeals for the necessary zoning modifications. One Thousand Fleet and Henrietta Corporation have the same address and Patrick Turner's name appears on all of One Thousand Fleet's zoning and conditional use applications.

   Many of the contentions of the Community Organization and Ingrao in the four underlying lawsuits and in their counterclaim in this case concern the propriety of the Board issuing zoning modifications and permits given the change in the entity seeking to purchase the property. This issue is not before us on this appeal and we express no opinion on it.

2. Notwithstanding the reference to fifty-six apartment units in the letter from the Community Organization, the record and the briefs of both Appellant and Appellees refer to the construction of fifty-seven apartment units.

local funding, Fleet was required to reserve ten apartment units in the planned residential facility for persons of moderate income. Fleet alleges that at this point the Community Organization's support for the project evaporated. According to Fleet, the public financing was discussed at several public meetings and opposition to the project became intense. Fleet alleges in its complaint that racism motivated the opposition and that at one of the meetings, Guerriero stated that he opposed the project because "it would attract residents of African–American descent" to the neighborhood; Guerriero suggested that a lawsuit should be filed to prevent further development of the project. Fleet further alleges that at this meeting, Guerriero also offered to fund a lawsuit to stop the project, although he did not wish to have his name associated with the lawsuit.

On April 5, 1995, counsel for Guerriero sent a letter to Glenn Charlow of the Manekin Corporation, the Bagby Furniture Company's realtor. In the letter, Guerriero offered to purchase the property for $300,000 cash. The record does not reflect whether Mr. Charlow responded, but Guerriero's offer apparently was not accepted as Fleet ultimately succeeded in purchasing the building for the agreed upon one million dollars.

### The Underlying Law Suits

The Community Organization and Ingrao filed four lawsuits against the Board and the Mayor and City Council of Baltimore.[3] The lawsuits challenged the Board's extension of the conditional use authority, the City's issuance of the building permit, and the City's rezoning of the Bagby Furniture build-

---

**3.** Ingrao and the Community Organization filed two lawsuits against the City of Baltimore seeking a determination that the zoning authority for the property was no longer valid and challenging the issuance of building permits for the project. They filed two additional lawsuits, seeking judicial review of the actions taken by the Baltimore City Board of Municipal and Zoning Appeals. The four cases, all captioned "LICO et al. v. Mayor & City Council et al.," were filed in the Circuit Court for Baltimore City and numbered as follows: 95094003/CL194931; 95124005/CL 196386; 95139066/CL194323; 95082023/CL197154.

ing. Fleet was not named as a defendant in any of the four lawsuits filed by Gerald R. Walsh, counsel for the Community Organization and Ingrao. Fleet sought to intervene in these four actions and to consolidate the cases. The circuit court (Rombro, J.) granted Fleet's motion to intervene and ordered the cases consolidated. The court also agreed to shorten the time to file pleadings and motions, finding that the lawsuits could jeopardize Fleet's financing if allowed to run their normal course.

On June 8, 1995, the circuit court dismissed all four lawsuits, concluding that the Community Organization and Ingrao lacked standing to assert the claims contained in the four actions. The Community Organization and Ingrao appealed to the Court of Special Appeals. Ultimately, on December 5, 1995, the appeals were dismissed by the Court of Special Appeals for lack of prosecution.

## The Present Lawsuit

On April 24, 1995, Fleet filed a one-count complaint against Guerriero, Ingrao, and the Community Organization alleging abuse of process. On June 26, 1995, Fleet filed an amended complaint, adding a count of malicious use of process. The complaint alleged that the Community Organization and Ingrao, at the direction of Guerriero and with his financial backing, filed suits in order to prevent Fleet from completing its project and that the lawsuits were misused to facilitate Guerriero's purchase of the property at a reduced price.

The Community Organization and Ingrao filed a two-count counterclaim. In the first count, the Community Organization and Ingrao challenged the Board's issuance of a building permit because they contended that the conditional use permit, on which the building permit was premised, was invalid. The second count alleged defamation based on a letter Fleet sent to Administrative Judge Joseph H.H. Kaplan dated May 10, 1995, that allegedly accused Appellees of racism.

All parties moved to dismiss. The circuit court (Steinberg, J.) granted the motions of Guerriero, the Community Organi-

zation and Ingrao "for the reasons set forth in that motion, which this Court hereby adopts, and the additional fact that the underlying litigation which serves as the predicate for the malicious use of process cause of action is currently on appeal before the Court of Special Appeals of Maryland." Judge Steinberg entered final judgment in favor of Guerriero, the Community Organization, and Ingrao. *See* Maryland Rule 2–602.

Fleet appealed to the Court of Special Appeals. This Court granted certiorari before consideration by that court.

## I.

Despite the similarity in language, "[a]buse of process, malicious use of process, and malicious prosecution are essentially different and independent torts." R. GILBERT & P. GILBERT, MARYLAND TORT LAW HANDBOOK § 5.3, at 54 (1992). In Maryland, the term "malicious use of process" means malicious prosecution of a civil claim. "Malicious prosecution" in Maryland applies to criminal charges, but otherwise shares the same elements as malicious use of process. S. SPEISER, ET AL., THE AMERICAN LAW OF TORTS § 28:20, at 114 (1991, 1996 Supp.). "Abuse of process," on the other hand, is a distinct tort. Abuse of process in Maryland can apply to either civil or criminal charges. With these basic concepts in mind, we turn to the elements of malicious use of process and abuse of process under Maryland law.

### A. Malicious Use of Process

■ This Court in *Walker v. American Security Co.*, 237 Md. 80, 87, 205 A.2d 302, 307 (1964), described the tort of malicious use of process:

> [A]ctions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause.... Actions for malicious prosecution and malicious use of process have the same essential elements and are often referred to as being essentially synonymous,

with most of the cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding.

This Court has long recognized that "[s]uits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against." *North Pt. Constr. Co. v. Sagner*, 185 Md. 200, 206, 44 A.2d 441, 444 (1945). Public policy requires that citizens be free to resort to the courts to resolve grievances without fear that their opponent will retaliate with a malicious use of process lawsuit against them. *See Owens v. Graetzel*, 149 Md. 689, 694–95, 132 A. 265, 267 (1926).

The cause of action for malicious use of process has five elements and all must co-exist to maintain the action. *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 407, 494 A.2d 200, 205 (1985). First, a prior civil proceeding must have been instituted by the defendant. Second, the proceeding must have been instituted without probable cause. *Sagner*, 185 Md. at 208, 44 A.2d at 445. Probable cause for purposes of malicious use of process means "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." *Id.* at 208–09, 44 A.2d at 445. Third, the prior civil proceeding must have been instituted by the defendant with malice. Malice in the context of malicious use of process means that the party instituting proceedings was actuated by an improper motive. *Keys*, 303 Md. at 408 n. 7, 494 A.2d at 205 n. 7. As a matter of proof, malice may be inferred from a lack of probable cause. *See Montgomery Ward v. Wilson*, 339 Md. 701, 717, 664 A.2d 916, 924 (1995). Fourth, the proceedings must have terminated in favor of the plaintiff. *See Berman v. Karvounis*, 308 Md. 259, 266, 518 A.2d 726, 729 (1987). Finally, the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action. *Keys*, 303 Md. at 407, 494 A.2d at 205; *Owens*, 149 Md. at 695, 132 A. at 267.

## B. Abuse of Process

In his treatise, Professor Keeton notes that an action for malicious use of process does not provide a remedy for those cases "in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed. In such cases a tort action has been developed for what is called abuse of process." W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS § 121, at 897 (5th ed.1984). In *Krashes v. White,* 275 Md. 549, 555, 341 A.2d 798, 802 (1975), Judge Eldridge, writing for the Court, described the tort of abuse of process:

> The tort of abuse of process occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law. (citations omitted.)

To sustain a cause of action for abuse of process, the plaintiff must prove: first, that the defendant wilfully used process after it has issued in a manner not contemplated by law, *Keys,* 303 Md. at 411, 494 A.2d at 207; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process, *Berman,* 308 Md. at 262, 518 A.2d at 727. A bad motive alone is not sufficient to establish an abuse of process. "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required...." KEETON, *supra,* § 121, at 898; *see also Berman,* 308 Md. at 265, 518 A.2d at 729; *Bartlett v. Christhilf,* 69 Md. 219, 230–31, 14 A. 518, 522 (1888); *Wells v. Orthwein,* 670 S.W.2d 529, 533 (Mo.Ct.App.1984) ("[N]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be.").

In summary, the two torts at issue in this case are separate and distinct. This Court, in *Walker v. American Security Co.,* 237 Md. 80, 87, 205 A.2d 302, 306–07 (1964), outlined the differences between the two as follows:

A tort action for abuse of process, on the one hand, and the tort actions for malicious prosecution and malicious use of process, on the other hand, are essentially different and independent actions. An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause. (emphasis in original).

*See also Bidna v. Rosen,* 19 Cal.App.4th 27, 23 Cal.Rptr.2d 251, 259 (1993), *rev. denied,* No. G012357, 1993 Cal. LEXIS 6936 (Cal. Dec. 30, 1993) (describing malicious use of process as concerning a meritless lawsuit and abuse of process as concerning "misuse of the *tools* the law affords litigants once they are in a lawsuit" (emphasis in original)).

The case of *Keys v. Chrysler Credit Corporation,* 303 Md. 397, 494 A.2d 200 (1985), illustrates the differences between malicious use of process and abuse of process. In *Keys,* Anna Keys's wages were attached by a writ of garnishment issued to enforce a judgment that Keys had fully satisfied more than four years earlier. *Id.* at 400, 494 A.2d at 201. After Keys's attorney brought the matter to the attention of Chrysler Credit Corporation, Chrysler Credit checked its records and found that Keys had indeed satisfied the judgment four years earlier. Chrysler Credit reimbursed her wages. Keys sued Chrysler Credit for, *inter alia,* malicious use of process and abuse of process. *Id.* at 402, 494 A.2d at 202. Judge McAuliffe, writing for the Court, concluded that the trial court improperly dismissed Keys's malicious use of process claim because a prior civil proceeding had been instituted by Chrysler Credit against Keys, that the proceeding was instituted without probable cause inasmuch as Chrysler admitted that Keys had fully paid the judgment, that malice may be inferred

from a want of probable cause, that the proceeding was terminated in Keys's favor, and that Keys suffered a seizure of her property, *i.e.*, the garnished wages. *Id.* at 408–10, 494 A.2d at 205–07. The Court held, however, that Keys could not maintain an action for abuse of process because there was no evidence of any improper use or perversion of the process after it issued. The Court noted that Keys's "proper complaint in this case is with the *issuance* of the process, . . . and she has no proper proof of an abuse of process." *Id.* at 412, 494 A.2d at 207 (emphasis added). Thus, an action for abuse of process could not survive.

With the elements of the two torts in mind, we turn now to examine whether Fleet alleged facts sufficient to support causes of action for malicious use of process and abuse of process.

## II.

■ Fleet appeals the judgment of dismissal, with prejudice, of its two-count complaint against Guerriero, the Community Organization, and Ingrao. Accordingly, this Court must "assume the truth of all relevant and material facts well pleaded and all inferences which can be reasonably drawn from those facts." *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 333, 624 A.2d 496, 498 (1993). In considering the allegations, however, we consider allegations of fact and inferences deducible from them; we do not consider merely conclusory charges. *Berman v. Karvounis*, 308 Md. 259, 265, 518 A.2d 726, 728–29 (1987).

### A. Malicious Use of Process

Fleet alleges that the Community Organization, Ingrao, and Guerriero committed the tort of malicious use of process on the grounds that the four lawsuits challenging the zoning of the disputed property were instituted without probable cause and with malice, in that the lawsuits were intended to interfere with Fleet's ability to finance the purchase and to facili-

tate Guerriero's purchase of the property at a reduced price. Fleet further alleges that the dismissal of all four zoning lawsuits by Judge Rombro constituted termination in its favor. Finally, Fleet claims damages based on the inability to obtain financing, delays, and loss of rental income. The Community Organization, Guerriero, and Ingrao contend that Fleet lacks standing because the Community Organization and Ingrao did not name Fleet as a party in any of the underlying lawsuits. Fleet maintains that the fact that it was not named as a defendant in any of the suits is of no moment, because it was clearly the target of each action and the object of the four cases was to seek a revocation or withdrawal of valuable governmental permits that it held. Fleet argues that in order to protect its rights, intervention was inevitable.

As discussed above, *see supra* part I.A., a cause of action for malicious use of process consists of five elements, all of which must co-exist in order to maintain the action. The plaintiff's failure to satisfy even one element mandates dismissal. We shall hold that because Fleet failed to allege facts to support a cause of action for malicious use of process, the circuit court properly granted Appellees' motions to dismiss.

We shall first address the element of malicious use of process that requires the proceeding be terminated in favor of the plaintiff. The judgment dismissing the Community Organization and Ingrao's four zoning lawsuits was pending on appeal when Fleet filed its amended complaint in this case. The question of whether a proceeding has been "terminated" for purposes of a malicious use of process action when the judgment "terminating" the proceeding was pending on appeal at the time the plaintiff initiated the malicious use of process action is a question of first impression in this State.

Section 674(b) of the Second Restatement of Torts specifies that a cause of action for malicious use of process shall lie only when "the proceedings have terminated in favor

of the person against whom they are brought." [4] The comments to this section address the issue of appeal:

> A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail.

RESTATEMENT (SECOND) OF TORTS § 674 cmt. j. The Restatement position represents the majority view. SPEISER, *supra*, § 28:23 & n. 10, at 144; *see also* M.C. Dransfield, Annotation, *Pending Appeal in Civil Action as Precluding Malicious Prosecution Action Based on Successful Termination in Trial Court*, 41 A.L.R.2d 863, 863 (1955) (describing as the "better view" and that which "may be legitimately termed the weight of authority" the rule that "the pendency of an appeal ... precludes maintenance of a suit for malicious prosecution"). The majority rule furthers an important judicial policy—the conservation of judicial resources. We agree with the assessment of the intermediate appellate court of Arizona:

---

**4.** We leave for another day the question of whether a party who was not an original party in the underlying lawsuit but rather participated as an intervenor may maintain a cause of action for malicious use of process. Of the few states that have addressed the issue, most hold that the malicious use of process plaintiff must have been an original party to the underlying action. *See, e.g, H. Eilerman & Sons v. Nestley*, 285 Ky. 412, 148 S.W.2d 287, 289 (App.1941); *Duncan v. Griswold*, 92 Ky. 546, 18 S.W. 354, 355 (App.1892); *Cuddy v. Sweeney*, 7 Mass.App.Ct. 880, 386 N.E.2d 805, 806 (1979); *McGranahan v. Dahar*, 119 N.H. 758, 408 A.2d 121, 130 (1979); *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 193 (1993). Pennsylvania seems to recognize an exception to the general rule for intervenors who are indispensable parties to the underlying proceedings but were not joined by the plaintiff as parties. The Supreme Court of Pennsylvania held that intervenors who were indispensable parties to the underlying action may maintain a cause of action for malicious use of process because the failure of the plaintiff in the underlying action to join them as indispensable parties should not bar a cause of action. *Hart v. O'Malley*, 544 Pa. 315, 676 A.2d 222, 225 (1996).

The majority rule prevents repetitive and unnecessary litigation. It would be a waste of judicial resources to allow the plaintiff in the malicious prosecution action to prosecute his claim only to have it rendered meaningless if later the appeal of the underlying action is decided against him. *Moran v. Klatzke*, 140 Ariz. 489, 682 P.2d 1156, 1159 (1984).

We adopt the view expressed in the Restatement and hold that Fleet could not maintain an action for malicious use of process when it filed the amended complaint on June 26, 1995. The judgment dismissing the underlying lawsuits was pending on appeal until December 5, 1995, when the appeal was dismissed. Fleet's cause of action for malicious use of process fails because the underlying proceedings were not terminated when the complaint alleging malicious use of process was filed. This holding is in accord with several of our sister states that have addressed this issue. *See, e.g., Barrett Mobile Home Transport v. McGugin*, 530 So.2d 730, 732 (Ala.1988); *Klatzke*, 682 P.2d at 1158–59; *Cazares v. Church of Scientology of Cal.*, 444 So.2d 442, 446–47 (Fla.Dist.Ct.App. 1983); *Mattingly v. Whelden*, 435 N.E.2d 61, 63 (Ind.Ct.App. 1982); *Breen v. Shatz*, 267 S.W.2d 942, 943 (Ky.Ct.App.1954); *Parisi v. Michigan Townships Ass'n*, 123 Mich.App. 512, 332 N.W.2d 587, 591 (1983) (holding that malicious prosecution cause of action for purposes of statute of limitations does not accrue until final resolution on appeal).

As we previously discussed, all five elements of malicious use of process must co-exist to maintain a cause of action. Normally, the plaintiff's failure to allege facts sufficient to satisfy any one element would end our analysis. In this case, however, the underlying action was terminated December 5, 1995, when the Court of Special Appeals dismissed the appeal for want of prosecution, and if the termination element were the only element Fleet failed to satisfy, Fleet would be entitled to re-file the action. Accordingly, we shall also address Fleet's alleged damages.

Fleet fails to allege legally cognizable damages. To maintain a cause of action for malicious use of process, the

plaintiff must establish that wrongful proceedings caused an arrest, a seizure of property, or other "special injury." *Owens v. Graetzel*, 149 Md. 689, 697, 132 A. 265, 267 (1926). This Court has described the damages required by Maryland law as follows:

> Maryland has steadfastly adhered to the so-called "English" rule that no action will lie for the malicious prosecution of a civil suit when there has been no arrest of the person, no seizure of the property of the defendant, and no special injury sustained which would not ordinarily result in all suits prosecuted for like causes of action.

*Sagner*, 185 Md. at 207, 44 A.2d at 444; *see also Shamberger v. Dessel*, 236 Md. 318, 321, 204 A.2d 68, 70 (1964) (finding no cause of action for malicious use of process because "there was no special injury sustained by the appellant which would not ordinarily result in all caveats to wills involving devises of real property"); GILBERT & GILBERT, *supra*, § 5.1, at 50. "The mere expense and annoyance of defending a civil action is not a sufficient special damage or injury to sustain an action for malicious prosecution." *Sagner*, 185 Md. at 207, 44 A.2d at 445.

Fleet's malicious use of process count alleges that "Plaintiff has sustained actual damages as a consequence of the actions of the Defendants in that it has been unable to obtain final financing for the Project, has suffered delays which have increased costs and has sustained a loss of rental revenue among other damages." These damages are inadequate to maintain a cause of action for malicious use of process. Fleet alleges neither an arrest nor seizure of its property. Nor does Fleet allege a "special injury" for purposes of malicious use of process. To qualify as a "special injury," the damages must be different than those that ordinarily result from all suits for like causes of action. Fleet's alleged damages do not qualify as a special injury because any real estate developer facing a legal challenge to the zoning of its property would have suffered the same damages regardless of whether the zoning challenge was rightfully or wrongfully instituted. The Community Organization's and Ingrao's zon-

ing challenges would likely have impeded financing, caused delays, and decreased rental revenue under any circumstances. The damages Fleet suffered as a result of the four lawsuits are those that would ordinarily result from proceedings for similar causes of action. *Id.* at 207, 44 A.2d at 444.

## B. Abuse of Process

Fleet also alleges that the Community Organization, Ingrao, and Guerriero committed the tort of abuse of process. Fleet identified the process "abused" as the first two zoning challenges filed by the Community Organization and Ingrao. According to Fleet's complaint, the misuse of the process consisted of Guerriero's discussions with Fleet's lenders and Guerriero's attempt to purchase the property at a drastically reduced price. Fleet describes its damages as "loss of certain deposit money, delay of the Project, lost rents, increased construction, legal and financing costs and other damages." Guerriero, Ingrao and the Community Organization contend that Guerriero's letter offering to buy the Bagby Furniture building does not qualify as an abuse of the process of the underlying lawsuits and that Fleet failed to allege damages consisting of arrest or seizure of property as required for abuse of process.

We need not consider whether Fleet properly alleged abuse of process after the lawsuits were filed because we hold that Fleet did not allege legally cognizable damages. Consequently, the circuit court properly dismissed Appellees' motion to dismiss.

A cause of action for civil abuse of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process. *Bartlett v. Christhilf,* 69 Md. 219, 231, 14 A. 518, 522 (1888). Judge McSherry, writing for the Court in *Bartlett,* described the scope of abuse of process:

All the cases upon this subject depend either upon the arrest of the person or the seizure of his property; and we have been referred to none where this action was sustained

for an injury to the plaintiff's business or good name. Any unfounded suit may result in such injury; but it will hardly be seriously contended that where there has been no wrongful deprivation of liberty or no illegal seizure of property, that each unfounded suit is to be treated as such an abuse of the process of the law as will sustain action against the one who instituted it.

*Id.* at 231, 14 A. at 522. The law of several sister states is in accord. *See, e.g, Hopper v. Drysdale,* 524 F.Supp. 1039, 1041 (D.Mont.1981) (applying Montana law); *Withall v. Capitol Federal Savings of America,* 155 Ill.App.3d 537, 108 Ill.Dec. 202, 207, 508 N.E.2d 363, 368 (1987); *Reynolds v. Givens,* 72 Or.App. 248, 695 P.2d 946, 951 (1985); *cf. Raine v. Drasin,* 621 S.W.2d 895, 902 (Ky.1981) (holding that "injury to the person or his property" required for abuse of process); *Hertz Corp. v. Paloni,* 95 N.M. 212, 619 P.2d 1256, 1259 (App.1980) (holding that "unlawful interference with the plaintiff's person or property" required for abuse of process).

The intermediate appellate court in Illinois decided a case factually similar to the case before us and concluded, as we do, that delays in financing and delays in the development of a real estate project do not constitute damages cognizable under abuse of process. *Commerce Bank N.A. v. Plotkin,* 255 Ill.App.3d 870, 194 Ill.Dec. 409, 627 N.E.2d 746 (1994). In *Commerce Bank,* the Plotkins, the defendants in the abuse of process action, had filed suit against both the City of Peoria and the plaintiff, Commerce Bank, challenging the plaintiff's legal right to develop a shopping center. *Id.* 194 Ill.Dec. at 410, 627 N.E.2d at 747. In its suit for abuse of process, Commerce Bank alleged that the Plotkins and the other plaintiffs in the underlying action did not file the lawsuit for the purpose of obtaining the relief sought, but rather to prevent the plaintiffs from obtaining financing to develop the shopping center. Commerce Bank also alleged that the Plotkins had challenged the development in order to extort large sums of money from Commerce Bank in exchange for terminating the proceedings. Commerce Bank allegedly suffered losses from the delay in financing and, as a result, was forced

to sell a portion of the shopping center. *Id.* at 411, 627 N.E.2d at 748. The Illinois court wrote: "While we are not unsympathetic to the plaintiffs' predicament, we do not believe that the facts of this case support an action for abuse of process." *Id.* at 412, 627 N.E.2d at 749.

In this case, Fleet alleges only that it suffered injury to its business and to the Bagby Furniture building project; specifically, Fleet lost money, suffered a delay of its project, and faced increased construction, legal and financing costs. Fleet alleges no seizure of its property. Nor does Fleet allege an interference with its property lesser than actual seizure, such as a *lis pendens*. *See DeLeo v. Anthony A. Nunes, Inc.,* 546 A.2d 1344, 1347 (R.I.1988).

Fleet contends that this Court's decision in *Krashes v. White,* 275 Md. 549, 341 A.2d 798 (1975), stands for the proposition that neither arrest nor seizure of property is required to sustain a cause of action for abuse of process in Maryland. Fleet misconstrues *Krashes,* and reads our opinion too broadly. In *Krashes,* this Court addressed, as a certified question from the United States District Court for the District of Maryland, whether arrest is an essential element of the torts of malicious prosecution and abuse of process. *Krashes* involved abuse of *criminal* process—the defendant caused an arrest warrant to be issued against the plaintiff and then proceeded to extract a confessed judgment. *Id.* at 552, 341 A.2d at 800. This Court concluded:

> While the issuance by a court of some sort of criminal process against a party is necessary before that party can properly bring an action for abuse of *criminal* process, there is no requirement that the party be arrested or that an arrest warrant against him be issued.

*Id.* at 556, 341 A.2d at 802 (emphasis added).

Our holding in *Krashes* is limited to abuse of criminal process. We also held in *Krashes* that a plaintiff in a criminal malicious prosecution action need not prove any special damages, such as arrest or seizure of property, but we noted that malicious use of civil process requires seizure of the property

or other special injury. *Id.* at 554–55, 341 A.2d at 801. This Court did not address the requirements for abuse of civil process in *Krashes,* and we reject Appellant's argument that the Court intended to depart from the long-standing elements of abuse of civil process requiring arrest or seizure of property. *See Bartlett,* 69 Md. 219, 14 A. 518 (holding that arrest or seizure of property required for abuse of civil process).

The Circuit Court for Baltimore City properly dismissed Fleet's abuse of process count. Fleet failed to plead facts establishing legally cognizable damages. In cases of abuse of civil process, Maryland law requires an arrest or a seizure of the property. Fleet alleged neither.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**