**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0051

September Term, 2013

HAVILAH REAL PROPERTY SERVICES,
LLC

v.

RONALD EARLY, ET AL.

Zarnoch,
Kehoe,
Hotten,

JJ.[1]

Opinion by Zarnoch, J.

Filed: March 27, 2014

[1] Judge Timothy E. Meredith and Judge Kevin F. Arthur did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8-605.1.

Appellant Havilah Real Property Services, LLC ("Havilah") is a Maryland limited liability company engaged in the business of buying, selling, and owning real estate. Havilah filed a complaint against attorney Ronald Early and his firm, Lerch, Early & Brewer, Chtd., alleging that Early and the firm (collectively, "the Attorneys") conspired with one of their former clients to file a frivolous lawsuit against Havilah, thereby engaging in malicious use of process. The Circuit Court for Montgomery County dismissed Havilah's complaint with prejudice, which Havilah now appeals. For the following reasons, we affirm the judgment of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

This case is best understood as a story of three separate but related cases.

First, in 2007, Vicky Lynn Karen and VLK, LLC[1] ("VLK") retained the Attorneys to represent them. On November 9, 2007, the Attorneys filed a complaint[2] in the Circuit Court for Montgomery County on behalf of VLK against (1) Lamar Carlson, then a member of VLK with whom Karen was formerly romantically involved; (2) Joan Alderman, the principal of Havilah and Carlson's then-current romantic partner; (3) and Havilah (the "Maryland action"). The essence of the complaint was that Havilah, Carlson, and Alderman had tortiously interfered with VLK's business prospects by purchasing 48 properties in the District of Columbia. The complaint alleged various counts of fraud, breach of contract,

---

[1]Karen filed the Articles of Organization for VLK in December 2004. VLK is organized for the purpose of acquiring, owning, and managing real property.

[2]*VLK, LLC v. Carlson, et al.*, No. 288768V (Md. Cir. Ct. for Montgomery Cnty. filed Nov. 9, 2007).

breach of fiduciary duty, and interference with contractual relations, among other counts. Within a week of filing the complaint, the Attorneys filed 48 *lis pendens*[3] on D.C. properties owned by Havilah. Havilah sought to terminate the case via motions several times, though all of its attempts were denied: (1) a motion for summary judgment filed on December 15, 2008 and argued at a hearing on January 21, 2009; (2) a motion for judgment filed on February 19; and (3) a renewed motion for judgment filed on February 25.[4] A fourteen-day jury trial conducted from February 9 to February 27, 2009, resulted in a $10,000 jury verdict on March 10, for VLK against Carlson.[5] Havilah was not liable on any of the counts.

While the Maryland action was pending, Havilah and Alderman filed a complaint[6] against VLK and Karen in the Superior Court for the District of Columbia on March 25, 2008. They alleged claims of tortious interference with prospective economic advantage and malicious prosecution. The court later dismissed the malicious prosecution claim, holding

---

[3] *Lis pendens* "means a pending lawsuit, referring to the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment." *DeShields v. Broadwater*, 338 Md. 422, 433 (1995). A notice of *lis pendens* "warn[s] all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." Black's Law Dictionary 950 (8th ed. 2004).

[4] Havilah's renewed motion for judgment was partially granted as to VLK's claim for punitive damages.

[5] VLK filed a notice of appeal to this Court but later withdrew the appeal. The judgment against Carlson was fully paid and satisfied as of May 29, 2009.

[6] *Havilah Real Property Servs., LLC, et al. v. VLK, LLC, et al.*, No. 2008-CA-2474, (D.C. Super. Ct. filed Mar. 25, 2008).

that the filing of a *lis pendens* did not constitute a special injury required to sustain the claim.

A twelve-day jury trial, conducted from January 9 to January 25, 2012, resulted in a verdict for Havilah and Alderman in the amount of $602,942, plus costs and interest, against VLK and Karen. Both sides filed cross-appeals[7] to the D.C. Court of Appeals, which are still pending as of this writing.

Finally, we come to the case before us. On May 25, 2012, Havilah filed a complaint in the Circuit Court for Montgomery County against the Attorneys. The complaint alleged that the Attorneys "knew that there was no probable cause to support" 31 of the 48 *lis pendens* the Attorneys had filed on Havilah-owned properties in the Maryland action. Havilah alleged that Karen and VLK's

> intent was to tortiously and maliciously interfere with Havilah's business relationships in order to punish Karen's ex-boyfriend, Carlson, the then-current boyfriend of Havilah's principal, [Alderman] . . . and/or, at a minimum, to use Havilah and its properties as leverage to achieve their goals with respect to Carlson, in reckless disregard of the damages those unlawful actions were likely to cause Havilah.

On October 19, the circuit court granted the Attorneys' motion to dismiss the complaint but also granted Havilah leave to amend.

Havilah's amended complaint, filed October 31, included additional allegations as to

---

[7]*Havilah Real Property Servs., LLC v. VLK, LLC, et al.*, No. 12-CV-403 (D.C. filed Mar. 26, 2012); *VLK, LLC, et al. v. Havilah Real Property Servs.*, No. 12-CV-542 (D.C. filed Apr. 16, 2012). The D.C. Court of Appeals heard oral argument in the two cases on September 17, 2013.

what the Attorneys knew at the time the 31 *lis pendens* were filed in the Maryland action. For example, Havilah alleged that the Attorneys knew that "Carlson was Karen's business partner and ex-lover" and that "Karen remained obsessed with Carlson, and clandestinely observed him and Alderman on occasion." Havilah also alleged that the Attorneys knew that VLK "had no funds to purchase any of the 31 properties and was no longer actively engaged in acquiring real estate." Instead, according to Havilah, VLK and Karen sought "to stop Havilah from selling the properties so they could extort money from Havilah and thereby share in the profits despite the fact that they had done no work that would justify any payment." Ultimately, according to Havilah, the Attorneys "expressed no hesitation and willingly agreed to participate in, and further, Karen's and VLK's malicious and tortious goal to harm Havilah and its business interests, and thereby punish Carlson and Alderman." Havilah sought at least $980,301 in compensatory damages.

The Attorneys filed a motion to dismiss, or, in the alternative, for summary judgment on November 28, which the circuit court considered at a hearing on February 27, 2013. At the beginning of the hearing, the judge stated "I believe that I actually remember parts of this case, certainly not much of it, but I remember this of Ms. Karen's case. And I remember that they were buying properties there in Anacostia near the stadium . . . . [B]ut I do have some familiarity with the underlying case here in the State of Maryland. And I actually have some

memory of it."[8] The Attorneys emphasized that Havilah could not establish that there was a lack of probable cause to initiate the Maryland action because the circuit court had "denied three dispositive motions in that lawsuit." They also argued that the complaint was deficient because there was "no proof of actual malice . . . [and] no proof of independent harm." Havilah conceded that it had not alleged actual malice in the complaint and argued that "the malice is imputed by acting outside the box, knowing the facts, and taking actions not justified by the facts."

In an oral ruling, the court found that

> [T]he court has considered the defendant's motion to dismiss the amended complaint. And there is only that one count of conspiracy to commit a malicious prosecution. The court is not satisfied that there's been the appropriate showing in the pleadings to justify that matter going forward. And that's kind of by admission of counsel . . . . And the court for the reasons articulated in the argument, I don't believe there's been a sufficient preliminary setting forth of facts for one, there are no specific facts to show that the attorney acted with malice, bad intent, or out of personal interest. I think the – he has to do that to overcome the qualifying privilege . . . .
>
> I find that Havilah really can't establish – even the element of lack of probable cause required support in the conspiracy claim against the attorneys. In this case, the court actually has already talked about it in argument here, heard the case, denied a motion for summary judgment, a motion for directed verdict at the close of the plaintiff's case, and a motion for directed verdict at the close of the case as a whole in this case. There was certainly more than probable cause to go forward . . . .

---

[8]The circuit court judge who heard argument on the motion to dismiss was the same judge who presided over the jury trial in the Maryland action.

The court dismissed the complaint with prejudice in a written order filed on March 4, 2013.

Havilah timely filed this appeal. Additional facts will be discussed below.

**QUESTIONS PRESENTED**

Havilah raises five issues[9] on appeal, which we have reordered and reworded as:

> I.       Did the circuit court err when it found there was probable cause to bring the Maryland action?

> II.      Did the circuit court err when it concluded that Havilah's allegations of "imputed malice" were insufficient?

> III.     Does Maryland or D.C. substantive law apply when evaluating Havilah's claim of special injury?

> IV.      Did the circuit court err when it concluded that the filing of a *lis pendens* is not a special injury?

> V.      Did the circuit court err when it found that Havilah's suit

---

[9]Havilah asks:

1. Should the Court apply the substantive law of the District of Columbia or the State of Maryland with respect to Plaintiff's claim for Conspiracy (Malicious Use of Process)?
2. Did the Circuit Court err in dismissing Plaintiff's Complaint due to Plaintiff's failure to allege actual malice on the part of the attorney Defendants?
3. Whether the denial of a Motion for Summary Judgment, or a Motion for Judgment, in the underlying action establishes probable cause as a matter of law in a subsequent action for malicious use of process?
4. Whether Maryland law recognizes that the filing of a *lis pendens* constitutes a special injury for the purposes of an action for Malicious Use of Process?
5. If this Court holds that District of Columbia law must be applied, whether collateral estoppel bars this action based on the holding of the Superior Court of the District of Columbia or whether this action must be stayed pending the outcome of the appeal on that issue in the D.C. action?

is barred by collateral estoppel?

Because our answer of "no" to the first two questions conclusively disposes of the appeal, we decline to reach the remaining issues. We therefore affirm the judgment of the circuit court.

## STANDARD OF REVIEW

When reviewing a motion to dismiss, an appellate court must determine "whether the trial court was legally correct" in concluding that the "alleged facts and permissible inferences" of a complaint "nonetheless fail to afford relief to the plaintiff." *Sprenger v. Public Serv. Comm'n of Md.*, 400 Md. 1, 21 (2007). The reviewing court must "assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them." *Parks v. Alpharma, Inc.*, 421 Md. 59, 72 (2011) (Quotations omitted). The court is confined to "the universe of facts pertinent to the court's analysis of the motion" and focuses on "the four corners of the complaint and its incorporated supporting exhibits, if any." *Id.* (Quotations omitted).

## DISCUSSION

Havilah alleged only one count in its complaint: conspiracy to commit malicious use of process. Because "no action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort," we must determine whether Havilah adequately pled that the Attorneys committed the alleged tort of malicious use of

process. *See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 190 (1995) (Quotation omitted). Malicious use of process[10] has five required elements:

> (1) a prior civil proceeding must have been instituted by the defendant;
> (2) the proceeding must have been instituted without probable cause;
> (3) the prior civil proceeding must have been instituted by the defendant with malice;
> (4) the proceedings must have been terminated in favor of the plaintiff; and
> (5) the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.

*See One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) (Citations omitted).

The circuit judge based his decision to dismiss the complaint on two grounds: (I) Havilah failed to show a lack of probable cause, and (II) Havilah failed to allege malice. We address each basis in turn.

## I.     Probable Cause

In discussing the probable cause element in his oral ruling, the circuit judge referred to the Maryland action and stated that "the court actually has already talked about it in argument here, heard the case, denied a motion for summary judgment, a motion for [judgment] at the close of the plaintiff's case, and a motion for directed verdict at the close

---

[10] Although modern cases distinguish between malicious use of process and malicious prosecution for civil and criminal cases, older cases simply referred to both torts as malicious prosecution. *See, e.g.*, *McNamee v. Minke*, 49 Md. 122, 134-35 (1878) (appeal from dismissal of "malicious prosecution of an ordinary action of ejectment").

of the case . . . . There was certainly more than probable cause to go forward . . . ." Havilah argues that the denials of its motion for summary judgment and motions for judgment in the Maryland action do not "establish probable cause as a matter of law in a subsequent action for malicious use of process." It contends that the circuit court erred in reaching that conclusion because "the evidence was voluminous" and there was no explanation of the reasons for the denials of the motions. It also emphasizes that there was no evidence that the circuit court, in denying the motions in the Maryland action, "parse[d] its holding as to specific properties" and argues that "while there may have been probable cause for filing the action and the *lis pendens* as to certain properties, there was no basis in law or fact to support those actions with respect to the 31 properties at issue."

Probable cause, in malicious use of process, "means a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." *One Thousand Fleet Ltd. P'ship*, 346 Md. at 37 (Quotation omitted). The lack of probable cause is an "indispensable element[]," without which a claim of malicious use of process must fail. *Owens v. Graetzel*, 149 Md. 689, 696 (1926). A plaintiff seeking to establish a suit for malicious use of process on the ground of conspiracy between a client and an attorney has the burden of "show[ing] such act or acts as amount to a lack of probable cause and an agreement to bring an action understood by both attorney and client to be groundless, and brought as such." *North Point Const. Co. v. Sagner*, 185 Md. 200, 208 (1945).

9

A prior judgment against the defendant, now the plaintiff in a malicious use of process case, is generally "conclusive proof of probable cause," even if the judgment is later reversed on appeal.[11] *Owens*, 149 Md. at 696; *see also Clements v. Odorless Excavating Apparatus Co.*, 67 Md. 461, 463-64 (1887). Here, however, what the circuit court found in support of probable cause was not a judgment against Havilah, but the denials of its two motions for judgment.[12] When a court denies a motion for judgment, it finds that "the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover." *Cavacos v. Sarwar*, 313 Md. 248, 259 (1988) (Quotation omitted); *see also* Md. Rule 2-519(b).

---

[11]This is also the rule outside of Maryland. *See generally* L.C. Warden, *Judgment in Prior Civil Proceedings Adverse to Instant Plaintiff in Malicious Prosecution as Evidence of Probable Cause*, 58 A.L.R.2d 1422 § 3[a] (1958) ("By the great weight of authority, unless a judgment or decree in prior civil proceedings adverse to the instant plaintiff in malicious prosecution was obtained by fraud, perjury, or other improper means, the judgment or decree establishes or shows conclusively the existence of probable cause for bringing the prior action.").

[12]The circuit court also cited the prior denial of Havilah's motion for summary judgment as a factor in its probable cause evaluation. Denying a motion for summary judgment means finding there was a "genuine dispute as to any material fact" and that the party seeking judgment is not "entitled to judgment as a matter of law." Md. Rule 2-501(f). However, a court "possess[es] discretion to refuse to pass upon, as well as discretion to affirmatively deny, a summary judgment request in favor of a full hearing on the merits . . . even though the technical requirements for an entry of such a judgment have been met." *Dashiell v. Meeks*, 396 Md. 149, 164 (2006) (Quotation omitted). Because two motions for judgment were denied in the prior case against Havilah, we need not address whether the denial of a motion for summary judgment is independent evidence of probable cause for the underlying suit.

Although no Maryland cases have considered whether rulings on motions for judgment have any bearing on a later determination of probable cause, case law of other states sheds some light on the issue. The states that have considered the question generally fall into two camps, with the dividing line being whether a prior ruling is just one factor to consider in a probable cause evaluation or whether it creates a presumption of probable cause.

In *Kirk v. Marcum*, 713 S.W.2d 481, 485 (Ky. Ct. App. 1986), the Court of Appeals of Kentucky rejected the contention that "probable cause was established as a matter of law by the trial court's failure to sustain [the defendant's] motion for a directed verdict" in the underlying action. The court afforded no presumption of probable cause "merely because the defendant loses prejudgment motions" because "[i]n ruling on a defendant's motion for directed verdict the court must draw all fair and rational inferences in favor of the plaintiff and grant the motion only when the evidence is insufficient to support a verdict for the plaintiff." *Id.* Arizona likewise takes a narrow view of the persuasiveness of a ruling on a prior motion for judgment and treats the denial of such a motion as just one factor in the probable cause inquiry.[13] *See Chalpin v. Snyder*, 207 P.3d 666, 672 (Ariz. Ct. App. 2008)

---

[13] Arizona and Vermont also treat the denial of a motion for summary judgment as a factor in the probable cause inquiry. *See Wolfinger v. Cheche*, 80 P.3d 783, 791-92 (Ariz. Ct. App. 2003) ("[T]he defeat of a motion for summary judgment is a *factor* that the court should consider in determining whether there is or is not an objectively reasonable basis for a claim or defense; the denial is not, standing alone, *dispositive* of the issue as a matter of law.") (emphasis in original); *Bacon v. Reimer & Braunstein, LLP*, 929 A.2d 723, 726 (Vt. 2007) (continued...)

11

(denial of a motion for judgment "is not conclusive evidence that a party initiating a claim had probable cause to bring it for purposes of a malicious prosecution action").

The United States Court of Appeals for the Eighth Circuit provides an example of the alternative "presumption" approach. In *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 (8th Cir. 1999), the Court of Appeals held that the "rejection of [the plaintiff's] motion for judgment as a matter of law . . . fatally undermines its claims for malicious prosecution." The Court reasoned that because the applicable Federal Rule of Civil Procedure, Rule 50(a), "permits dismissal when 'there is no legally sufficient evidentiary basis for a reasonable jury to find for' the non-moving party at the close of that party's evidence,"[14] the denial of a motion for judgment showed that "reasonable jurors could differ as to whether [the defendant] should prevail." *Id.* In other words, "[i]f reasonable jurors could find in [the defendant's] favor, it follows that there was probable cause for bringing the counterclaims, that is they were pursued with a reasonable belief of success." *Id.*

---

[13](...continued)
("[T]he denial of a motion of summary judgment *may* provide persuasive evidence that the case had sufficient merit to establish the element of probable cause and thereby defeat a subsequent suit for malicious prosecution.") (Emphasis in original).

[14]Although the federal cases rely on a different formulation of the standard of review, we do not see a substantive difference from the standard used in Maryland. *See Lowery v. Smithsburg Emergency Medical Service*, 173 Md. App. 662, 683 (2007) (In reviewing the grant of a motion for judgment, "[t]he Court assumes the truth of all credible evidence on the issue and any inferences therefrom in the light most favorable to . . . the nonmoving parties. Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration.") (Citations and quotations omitted).

Other courts that have adopted the presumption of probable cause in cases involving the denial of a motion for summary judgment[15] are California, Georgia, and Pennsylvania. *See Roberts v. Sentry Life Ins.*, 90 Cal. Rptr. 2d 408, 414 (Cal. Ct. App. 1999) ("denial of [the] defendant's summary judgment in an earlier case normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit");[16] *Davis v. Butler*, 522 S.E.2d 548, 550 (Ga. Ct. App. 1999) (holding that the "denial of summary judgment constitutes a legal determination that the action has substantial justification, because it is not groundless or frivolous and can proceed to jury trial," thereby precluding an abusive litigation claim); *Meiksin v. Howard Hanna Co.*, 590 A.2d 1303, 1307 (Pa. Super. Ct. 1991) (The denial of a motion for summary judgment "suggests that there was competent evidence of sufficient quantity and quality to demonstrate probable cause for a reasonable belief that the action could be maintained").[17] *Cf. Nobelpharma Ab v. Implant Innovations, Inc.*, 930 F.

---

[15]Because a motion for judgment is held to a higher standard of scrutiny than a motion for summary judgment, it stands to reason that states that afford a presumption of probable cause to the denial of summary judgment would afford the same presumption to the denial of a motion for judgment.

[16]California later extended this rule to the denial of a motion to strike. *See Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002) ("[A] trial court's denial of a motion to strike . . . establishes probable cause to bring the action, and precludes the maintenance of a subsequent malicious prosecution action, unless the prior ruling is shown to have been obtained by fraud or perjury."). California also adheres to the rule that the granting of summary judgment to the defense does not establish a *lack* of probable cause to bring the action. *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 742 (Cal. 2003); *Padres L.P. v. Henderson*, 8 Cal. Rptr. 3d 584, 601 (Cal. Ct. App. 2003).

[17]Pennsylvania also holds that a jury verdict in favor of the defendant in the prior
(continued...)

13

Supp. 1241, 1255 (N.D. Ill. 1996) (The denial of a motion for summary judgment showed that the suit could not have been "objectively baseless," thereby precluding a later antitrust claim).

We believe that, when faced with the denial of a motion for judgment, the presumption approach is more in line with Maryland case law. First, the Court of Appeals has held that the issuance of an preliminary injunction can provide evidence of probable cause, even if the injunction is later overturned. *See H.P. Rieger & Co. v. Knight*, 128 Md. 189, 199 (1916). The Court emphasized that the type of injunction matters when it comes to the evaluation of probable cause:

> And as to what shall be deemed conclusive of probable cause . . . where the injunction is issued after the court is fully informed by proof taken and argument on both sides. The granting of the injunction under [these] circumstances [is] held to be conclusive of probable cause and hence prevents recovery for malicious prosecution, but if a preliminary injunction is granted, *ex parte*, on the allegations of the bill and the exhibits, without notice to or hearing of the other side, and afterwards the injunction is dissolved, we can see no reason why the granting of it under those circumstances should be held to be conclusive of probable cause.

*Id.* (citing *Clements*, 67 Md. at 463-64); *see also Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 104 F.2d 105, 107 (2d Cir. 1939) ("The granting of a final

---

[17](...continued)
proceeding does "not conclusively establish[]" the absence of probable cause in a later action for malicious use of process against the original plaintiff. *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 972 (Pa. Super. Ct. 2011).

injunction, despite reversal on appeal, is conclusive evidence of probable cause."). *Cf. Bokum v. Elkins*, 355 P.2d 137, 141 (N.M. 1960) ("Since an order for a temporary injunction requires only a prima facie case, it is only prima facie evidence of probable cause."); *Butler v. Ratner*, 619 N.Y.S.2d 871, 874 (N.Y. App. Div. 1994) (holding that "the issuance of a temporary injunction or similar judicial recognition of the merit of the underlying case creates a presumption of probable cause and places upon the plaintiff the burden of pleading facts sufficient to overcome it").

A preliminary injunction is only "granted after opportunity for a full adversary hearing on the propriety of its issuance but before a final determination of the merits of the action." Md. Rule 15-501(b). Motions for judgment likewise require a court to consider in detail the available facts and applicable law, rather than a cold and undeveloped record. *See* Md. Rule 2-519(b). "If there was any evidence, no matter how slight, that was legally sufficient to generate a jury question, the motion [for judgment] was properly denied." *Ayala v. Lee*, 215 Md. App. 457, 467 (2013) (Quotations omitted). In the Maryland action, Havilah's motions for judgment were filed well into the proceedings, on the eighth and twelfth days of a fourteen-day jury trial. Although Havilah complains now that there is no evidence that the circuit court specifically considered the merits of 31 *lis pendens* when denying its motions, these complaints cannot outweigh the fact that the circuit court evaluated the case as a whole on two separate occasions and answered against Havilah each time.

Second, it has long been recognized in Maryland that

15

[a]ctions for the malicious prosecution of civil suits are not encouraged, because public policy requires that parties may freely enter the courts to seek redress and relief and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and so there would be a piling of litigation on litigation without end.

*Owens*, 149 Md. at 694-95; *see also State v. Rendelman*, 404 Md. 500, 522 (2008) (sanctioning litigants is "heavily disfavored because [it] discourage[s] the resort to courts") (quotation omitted); *Supreme Lodge American Protective League of Baltimore City v. Unverzagt*, 76 Md. 104, 108 (1892) ("Litigation of this character should be discouraged rather than promoted."); *Clements*, 67 Md. at 462-63 (Malicious use of process suits are not "encouraged, because the law recognizes the right of everyone to sue for that which he honestly believes to be his own, and the payment of costs incident to the failure to maintain the suit is ordinarily considered a sufficient penalty"). *Cf. Piselli v. 75th Street Medical*, 371 Md. 188, 205 (2002) (Article 19 of the Maryland Declaration of Rights "generally protects two interrelated rights: (1) a right to a remedy for an injury to one's person or property; (2) a right of access to the courts").

Finally, in the context of a Maryland Rule 1-341 motion for attorney's fees, we have previously adopted similar reasoning regarding the weight afforded to a circuit court's denial of a motion for judgment. In *Needle v. White, Mindel, Clarke and Hill*, 81 Md. App. 463, 466-67 (1990), the circuit court denied the appellees' motion for summary judgment and two

motions for judgment at trial. Following the submission of the case to the jury, the court

entered judgment for the appellees. *Id.* at 468. The court, acting *sua sponte*, also scheduled

a Maryland Rule 1-341[18] sanctions hearing and ultimately imposed sanctions on the appellant

and her attorneys. *Id.* In reviewing the award of sanctions, this Court could not "overlook

[the fact] that the court decided three times that the evidence was . . . sufficiently debatable

to deny the motions throughout the trial," thereby justifying the filing and continued pursuit

of the underlying litigation by the appellant and her attorneys. *Id.* at 479-80. We thus

reversed the imposition of sanctions as clearly erroneous. *Id.* at 480.

Given that under Maryland common law, suits for malicious use of process are

disfavored, it is more sensible to treat the denial of a motion for judgment as a presumption

in favor of probable cause, rather than treating it as just a factor in the probable cause

evaluation. Malicious use of process defendants cannot bear the burden of proving that the

---

[18]At the time, Maryland Rule 1-341 stated:

> In any civil action, if the court finds that the conduct of any
> party in maintaining or defending any proceeding was in bad
> faith or without substantial justification the court may require
> the offending party or the attorney advising the conduct or both
> of them to pay the adverse party the costs of the proceeding and
> the reasonable expenses, including reasonable attorney's fees,
> incurred by the adverse party in opposing it.

The rule now limits the imposition of sanctions to instances of a "motion by an adverse
party" and does not refer to a court's power to impose sanctions *sua sponte*. *See* Md. Rule
1-341(a).

prior action had probable cause. Rather, plaintiffs must prove that "the prosecution complained of was *without* 'probable cause,' and unless that burden be met there can be no recovery."[19] *North Point Const. Co.*, 185 Md. at 207 (Emphasis added).

Accordingly, we hold that the denial a motion for judgment "is a sound indicator of probable cause" that "normally establishes there was probable cause to sue, thus barring" a subsequent malicious use of process suit.[20] *Roberts*, 90 Cal. Rptr. 2d at 413-14. Havilah filed two motions for judgment in the Maryland action; both were denied. Havilah's complaint in this action focused on what the Attorneys allegedly knew at the time the *lis pendens* were filed against Havilah's properties in the Maryland action. It did not, however, allege any deficiencies in the circuit court's denials of Havilah's motions for judgment. Havilah has not rebutted the presumption of probable cause that those denials afford to the underlying lawsuit and thus, as a matter of law, cannot now establish that the Maryland action was initiated without probable cause. We therefore affirm the judgment of the circuit court.

---

[19]Further, when the defendant in a malicious use of process had legal representation in the prior case, the attorney's advice typically provides evidence of probable cause. *See Siegman v. Equitable Trust Co.*, 267 Md. 309, 317 (1972) ("The fact that an attorney acting in good faith in presenting and prosecuting a claim for his client had reasonable grounds to believe his client had a valid claim is sufficient to show probable cause on the part of the client."). Plaintiffs seeking to challenge their former adversary's *attorney* arguably face an even higher burden, because attorneys have a qualified privilege protecting them from civil liability. *See Fraidin v. Weitzman*, 93 Md. App. 168, 236-37 (1992).

[20]Of course, that presumption can be rebutted when confronted with evidence of fraud or false facts in the prior court proceedings. *See Roberts*, 90 Cal. Rptr. 2d at 414.

**II.     Malice**

The circuit court also dismissed Havilah's complaint for its failure to allege malice, stating that "there are no specific facts to show that the attorney acted with malice, bad intent, or out of personal interest. I think the – he has to do that to overcome the qualif[ied] privilege . . . ." Havilah argues that "when an attorney knowingly aids a client in the commission of an unlawful act, the [c]ourts have held malice is implied and the attorney may be held liable."

Attorneys have a qualified privilege that protects them from potential civil liability to their clients' litigation adversaries, except where the attorneys act with actual malice, bad intent, or for the attorneys' personal benefit. *Fraidin v. Weitzman*, 93 Md. App. 168, 236-37 (1992). In its complaint, Havilah alleged only that VLK's malice was "imputed to" the Attorneys and did not allege any facts of actual malice. The circuit court correctly found that, because Havilah did not allege actual malice, its complaint could not establish this element of malicious use of process.

Further, in focusing only on the meaning of malice in the context of an attorney's qualified privilege, Havilah ignored the principles defining malice for the purposes of malicious use of process. In this tort, malice "means that the party instituting proceedings was actuated by an improper motive" and "may be inferred from a lack of probable cause." *One Thousand Fleet Ltd. P'Ship*, 346 Md. at 37. Improper motive is narrowly defined to mean there was no legal basis for the assertion of the claim. *See Owens*, 149 Md. at 697

19

("[A] sinister and malicious motive does not make an act wrongful so long as the act is within the party's legal rights."). But where probable cause exists, "malice, however strong, will not constitute a cause of action." *Walker v. American Sec. & Trust. Co. of Washington, D.C.*, 237 Md. 80, 89 (1964). Havilah's allegations as to the Attorneys' knowledge and motive thus cannot show malice because there was probable cause to initiate the Maryland action.

Finally, in this case, Havilah sought to hold the Attorneys liable in addition to VLK and Karen, in the amount of at least $980,301 in compensatory damages. It already won a $602,942 jury verdict, plus costs and interest, against VLK in its D.C. case. Havilah seeks to satisfy the D.C. judgment against VLK by filing a suit in Maryland over VLK's former legal representation. Maryland law does not recognize such a collateral action.

For all these reasons we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**