NOT DESIGNATED FOR PUBLICATION

No. 120,727

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN PORUBSKY and SHAUNA PORUBSKY,
*Appellants*,

v.

PETER J. LONG and PATRICIA A. LONG,
Co-Executors of the Estate of Bernard Long,
Individually and as Trustees of the
Adam J. Long and Bernard C. Long Irrevocable Living Trust Agreement,
BERNARD J. HICKERT,
NEWBERY, UNGERER & HICKERT, LLP,
RANDALL FORBES, KEVIN FOWLER, and
FRIEDEN, UNREIN & FORBES, LLP,
*Appellees*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Opinion filed June 11, 2021.
Affirmed.

*Bryan W. Smith*, of Smith Law Firm, of Topeka, for appellants.

*Samuel P. Heaney*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, and
*David E. Larson*, pro hac vice, of Kansas City, Missouri, for appellees Randall Forbes, Kevin Fowler, and
Frieden, Unrein & Forbes, LLP.

*Timothy J. Finnerty*, of Wallace Saunders, Chartered, of Wichita, for appellees Bernard J. Hickert
and Newbery, Ungerer & Hickert, LLP.

*Stephen D. Lanterman*, of Topeka, for appellees Peter J. Long and Patricia A. Long, individually
and as trustees of the Adam J. Long and Bernard C. Long Irrevocable Living Trust Agreement.

1

Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM:  Steven and Shauna Porubsky (the Porubskys) appeal the district court's grant of summary judgment on their claims for malicious prosecution and abuse of process in favor of Bernard Long, individually and as Trustee of the Adam J. Long and Bernard C. Long Irrevocable Living Trust Agreement (the Longs); Bernard J. Hickert, and his firm, Newbery, Ungerer & Hickert, LLP; and Randall Forbes, Kevin Fowler, and their firm, Frieden, Unrein & Forbes, LLP (the Attorneys). After reviewing the record and the arguments submitted by the parties, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken mostly from summary judgment pleadings filed by both parties in district court. Steven Porubsky is the great-nephew of Bernard Long and Adam Long (the Long brothers). The Long brothers owned farmland, which included their house, and farm-related equipment near Topeka. Neither brother married nor had children. They resided together for over 50 years until Adam's death in 2011. The Long brothers, through their joint efforts, amassed a large estate and engaged several attorneys over the years to prepare various estate planning and trust documents.

The Long brothers' original respective wills, prepared in 1991 by lawyer Kirk Nystrom, provided for their assets to pass through their joint trust agreement, which also held title to their land and equipment. Both wills and the trust agreement provided that on the death of one brother, the other would take all his interest in the farm ground and farm machinery. On the death of both brothers, the assets would pass to other siblings and to a charitable foundation. The trust and wills remained unchanged for 16 years. Then in March 2007, Nystrom modified the trust agreement to direct that following the death of both brothers, their assets would be retained as an educational trust for young relatives.

2

The Long brothers later met with a new attorney, Carol Bonebrake, who prepared will revisions for the brothers signed in July 2007. The new wills provided that upon the death of one of the brothers, the farmland and farm equipment would pass to the surviving brother. Upon the death of the surviving brother, the new wills provided for the first time that the farmland and equipment would pass to Steven. At the time, Adam was 90 years old and Bernard was 87. Soon after the Long brothers signed the new wills, Bonebrake sent them a letter stating that if they wanted the land to eventually pass to Steven under the wills, it needed to be removed from the trust and titled in their individual names. But the letter was lost in the mail and did not arrive until May 2010.

Meanwhile, in November 2009, the Long brothers were involved in a serious accident when a semi-tractor trailer rig rear-ended their farm truck. Both men suffered injuries and Bernard sustained head injuries. Soon after the accident, Bernard told his niece, Vikki Lindemuth, that Steven would farm the land until he and Adam recovered from their injuries. As a result of the accident, Bernard eventually sued Penske Trucking Corporation, where he was represented by Bernard J. Hickert and Ben Swinnen. This case was later settled.

After the Long brothers finally received the letter from Bonebrake about their property, they asked Steven to set up a meeting with Bonebrake on their behalf. Steven arranged the meeting and took the Long brothers to Bonebrake's office in June 2010, but he did not sit in on the meeting. The Long brothers allegedly told Bonebrake they wanted to transfer fee simple interest in their farmland, which included the farmhouse they lived in, and the farm equipment to Steven *at the present time*. Bonebrake prepared the necessary warranty deeds and other documents, which were signed by the Long brothers on June 17, 2010. The deeds were recorded with the Shawnee County Register of Deeds.

The Long brothers later expressed confusion about when or if the transfer of their property had occurred. In November 2010, they met with Nystrom to resume discussions

about estate planning. In their meeting, the brothers indicated their land may have been transferred to Steven but they were not sure. In early 2011, they spoke with another attorney, Eric Kjorlie, indicating they were confused about whether their land or other property had been transferred. Kjorlie advised the Long brothers the property had been transferred to Steven through documents prepared by Bonebrake.

Adam died on June 22, 2011, in a farm accident. In July 2011, Bernard drove to Kent Lindemuth's office; at the time, Kent was married to Bernard's niece, Vikki. Bernard told Kent he needed help with his farm property and wanted to talk to an attorney, so Kent and Vikki drove Bernard to Hickert's law office. Bernard told Hickert he believed a relative may have taken advantage of him and that deeds had been filed conveying his property to Steven. Bernard was adamant with Hickert that he did not sign any documents giving away his farm and never would have done so. Bernard also told Hickert that Bonebrake was Steven's attorney, not his attorney.

When Hickert obtained the deeds Bonebrake had prepared, Bernard denied the signatures on the deeds were his. Hickert contacted Bonebrake after his meeting with Bernard. Bonebrake told Hickert she prepared the deeds transferring the property to Steven on behalf of the Long brothers. Hickert made many requests for Bonebrake to turn over her copy of the Long brothers' client file, but Bonebrake did not turn over the file until after litigation was commenced against Steven and Bonebrake.

In December 2011, Hickert tried to contact Steven by telephone. Steven responded by having his attorney, James Caplinger, contact Hickert. In February 2012, Hickert wrote Caplinger a letter indicating his concerns surrounding the transfer of the property and also indicating that Bernard intended to file a lawsuit if the parties could not reach a settlement or meet to discuss some agreement to return the property to Bernard. Caplinger and Steven ultimately declined Hickert's request to meet.

Hickert later retained the services of another attorney, Randall Forbes, to help in anticipation of litigation. Hickert drafted a verified petition on behalf of Bernard and reviewed it with Bernard. Before filing the lawsuit, Hickert contacted and interviewed several people about Bernard's situation including Bernard's physicians, tax accountant, neighbors, Kent and Vikki, employees of Kaw Valley Bank where Bernard banked, and his estate planning attorneys, Nystrom and Kjorlie.

On March 13, 2012, Hickert filed the verified petition against the Porubskys to set aside the conveyance of the farmland and farm equipment to Steven. The petition alleged, among other things, that Bernard lacked capacity when he signed the deeds or that he signed the deeds because of undue influence. Forbes entered a formal appearance as co-counsel on behalf of Bernard. Hickert also filed a separate lawsuit on behalf of Bernard against Bonebrake, alleging she had committed legal malpractice under the circumstances in her preparation of the deeds. The two lawsuits were later consolidated.

During discovery, Nystrom testified in his deposition that the Long brothers first told him in late 2010 that they may have transferred their farmland to Steven. Nystrom testified that he was puzzled by the transfer because it conflicted with his understanding of the Long brothers' testamentary intent and their original plan for avoiding probate. Nystrom's office notes indicated that he questioned the brothers about whether they may have signed a transfer on death deed to Steven because the brothers had never expressed any intent to transfer the property before their deaths. He testified that the brothers were confused on how the transfer of the land had occurred and that they did not intend to give the land to Steven, but only to let him farm it. Nystrom conceded that the Long brothers had a choice to consult with more than one attorney about handling their legal matters.

Kjorlie testified in his deposition that when he met with the Long brothers in early 2011, they knew they had transferred something, but they were not sure what they had transferred. Kjorlie testified the fact that the Long brothers would give away the only real

estate they owned, which included their home, during their lifetime without reservation "would be a concern that anyone would have if they just glanced at the—the situation." Kjorlie acknowledged that the Long brothers did not indicate to him that they wanted to take any action at that time to reverse the conveyance.

Bernard's eye doctor, Dr. John Marsh, testified in a deposition that he saw Bernard the day before the deeds to Steven were signed and that, without glasses, Bernard's vision was 20/200 in the right eye and 20/100 in the left, but it would not have made much difference even with his glasses on. Marsh later testified at trial that Bernard would have needed a magnifying glass to read the deeds. Marsh acknowledged that he performed different procedures on Bernard's eyes, all of which required him to sign an informed consent. Marsh testified that he would not have asked Bernard to sign an informed consent if he thought he was incompetent.

The Long brothers' tax accountant, Dennis Wycoff, testified in his deposition that the brothers had not spoken with him about the transfer of any of the property. Wycoff had enlisted help from Tom Rost, a former lawyer, to clarify what assets the brothers still owned. Rost testified in a deposition that when he obtained copies of the deeds and explained to the brothers that their land had been transferred to someone else, the brothers were "quite shocked." The brothers had explained to Rost that they had signed some documents at Steven's request, but they did not know what they had signed. Rost testified that the brothers insisted to him that Steven only had the right to farm the land and use the equipment, but he had no right of ownership.

When discovery concluded, the Porubskys filed a motion for summary judgment which the district court denied. Bonebrake also filed a motion for summary judgment in the legal malpractice case, and the district court granted the motion.

6

The case proceeded to a jury trial in February 2018 on Bernard's theories of lack of capacity and undue influence. At trial, in addition to the evidence already discussed, Bernard's lawyers presented the testimony of clinical neuropsychologist, Marc Quillen, PhD, who addressed Bernard's lack of capacity and the potential for undue influence. Quillen concluded that "any decisions/actions taken by Mr. Long since the November 9, 2009 motor vehicle accident were accomplished without the capacity to understand what he was doing or to adequately appreciate the consequences of his choices."

Bernard's lawyers also presented testimony by Bessie Tolbert, LMSW, who was proffered as an expert in elder abuse and financial exploitation. Tolbert testified that Bernard was financially exploited by Steven and that the land and equipment transfer resulted from Steven's undue influence over Bernard. The Porubskys challenged the qualifications and conclusion of both Quillen and Tolbert.

Bernard testified at trial that he had no recollection of signing the deeds to his property in 2010. He also testified under cross-examination that it was possible that he signed the deeds and simply did not remember doing so.

At the close of Bernard's case, the Porubskys moved for judgment as a matter of law, which the district court denied. The Porubskys then presented their case. Steven testified at trial that he did not exert any undue influence over Bernard to transfer his property to him, even though he agreed that Bernard now sincerely believed he did not transfer his property to him. At the close of the evidence, the Porubskys renewed their motion for judgment as a matter of law. The district court denied the motion and submitted the case to the jury. The jury returned a verdict for the Porubskys.

The Porubskys later sued Bernard, the trusts of Bernard and Adam Long, as well as the Attorneys and their respective law firms (collectively, the Defendants), claiming malicious prosecution and abuse of process. The Longs and the Attorneys each filed

motions for summary judgment. The motions were substantially the same except that the Longs' motion included a defense of reliance on advice of counsel. The Porubskys filed memoranda and exhibits in opposition of the Defendants' motions.

The district court filed a 69-page memorandum decision and entry of judgment for the Defendants. The district court found no evidence of improper use of legal process or improper or ulterior motive on the part of the Defendants to support the Porubskys' abuse of process claim. The district court also found the Defendants had probable cause to initiate and maintain the underlying action. Thus, it granted summary judgment for the Defendants on all of the Porubskys' claims.

The Porubskys timely appealed the district court's judgment. Bernard passed away on October 3, 2019, and the co-executors of his estate have been substituted as a party for Bernard individually and as Trustee of the joint trust agreement.

ANALYSIS

On appeal, the Porubskys claim the district court erred in granting summary judgment for the Defendants on the claims of malicious prosecution and abuse of process. More specifically, the Porubskys assert that the district court erred in weighing conflicting testimony and evaluating the credibility of the witnesses and evidence in granting the motion for summary judgment. The Porubskys also assert the district court erred in its legal analysis of their malicious prosecution and abuse of process claims.

The Attorneys have filed a separate brief and argue that the uncontested material facts establish as a matter of law that the Porubskys cannot make a submissible case of either malicious prosecution or abuse of process. The Attorneys assert that the undisputed evidence shows they had probable cause to initiate and maintain the underlying lawsuit. Alternatively, the Attorneys assert that this court should adopt the "prevailing view" that

the denial of dispositive motions in the underlying lawsuit establishes probable cause as a matter of law precluding the Porubskys' malicious prosecution case.

The Longs have filed a separate brief asserting that the uncontested facts establish as a matter of law that the Porubskys do not have a prima facie case for their malicious prosecution claim. Alternatively, the Longs assert a complete defense to the malicious prosecution claim based on reliance on advice of counsel.

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013). For purposes of summary judgment, an issue of fact is not genuine unless it has controlling force as to the controlling issue. In other words, a disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013).

*Malicious Prosecution*

The Porubskys' primary claim is that the district court erred in granting summary judgment for the Defendants on their malicious prosecution claim.

> "To maintain an action for malicious prosecution of a civil action the plaintiff must prove the following elements:
> "(a) That the defendant initiated, continued, or procured civil procedures against the plaintiff.
> "(b) That the defendant in so doing acted without probable cause.
> "(c) That the defendant acted with malice, that is he [or she] acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.
> "(d) That the proceeding terminated in favor of the plaintiff.
> "(e) That the plaintiff sustained damages. [Citations omitted.]" *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438 (1980).

It is undisputed the Defendants initiated and maintained an action against the Porubskys; the Porubskys prevailed in the underlying action; and, as a result of the action, the Porubskys incurred damages—the costs of defending against the suit. Thus, the only relevant legal questions are (1) whether the Defendants had probable cause to initiate and maintain the action and (2) whether the Defendants acted with malice in so doing. See 227 Kan. at 276.

*Probable Cause*

The district court's decision to grant summary judgment for the Defendants on all claims by the Porubskys was effectively premised on its conclusion there was probable cause to initiate and maintain the lawsuit. Our Supreme Court has discussed the meaning of probable cause in relation to a claim of malicious prosecution.

10

"Probable cause for instituting a proceeding exists when there is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or prudent, man in the belief that the party committed the act of which he is complaining. In cases for malicious prosecution, the inquiry as to want of probable cause is limited to the facts and circumstances as they appeared to defendant at the time the prosecution was commenced. If the facts are undisputed, the question of probable cause is one for the court to decide as a matter of law. If the facts tending to establish the existence or want of existence of probable cause are in dispute, it becomes the duty of the trial court to submit the question to the jury. [Citations omitted.]" 227 Kan. at 277-78.

The Porubskys' primary argument on appeal is that disputed material facts should have precluded the district court from granting summary judgment for the Defendants on their malicious prosecution claim. The Porubskys assert that the district court erred in weighing conflicting testimony and evaluating the credibility of witnesses and evidence in granting the motion for summary judgment.

There is no question that the record in the underlying lawsuit contains disputed facts on whether the Long brothers possessed sufficient mental capacity to deed their property to Steven and whether Steven unduly influenced the brothers to make the transfer. That dispute is what caused the underlying lawsuit to be submitted to a jury for resolution. But the main question to be resolved in the malicious prosecution case is only whether the Defendants had *probable cause* to initiate and maintain the underlying lawsuit. On this question, the district court found that "the facts underlying [the malicious prosecution claim] are really not contested in reference to what was reported, rather, what is contested here are the inferences sought to be drawn from the reported facts." The district court essentially found that even if all the inferences were resolved in favor of the Porubskys, the record reflects there was probable cause to initiate and maintain the underlying lawsuit. The same record the district court reviewed is before this court on appeal, and we are in the same position as the district court to determine whether the Defendants had probable cause to initiate and maintain the underlying lawsuit.

11

We have already recited the facts of the underlying lawsuit filed by the Longs against the Porubskys. Summarized, Bernard was adamant with Hickert that he did not sign any documents giving away his farmland and equipment to Steven, or at least he never intended to do so. Hickert investigated Bernard's claim before filing a lawsuit. He interviewed Nystrom, Kjorlie, Marsh, Wycoff, and Rost. These professionals all corroborated Bernard's claim that he and his brother never intended to deed their farm, including the house they lived in, to Steven. Hickert also tried to review Bonebrake's office file, but she did not turn over the file until litigation began. Hickert also tried to interview Steven with his counsel present, but they declined the meeting.

Steven had not been included as a beneficiary in the Long brothers' estate planning until Bonebrake made revisions in the wills in 2007. Even then, Steven was only named a beneficiary after both brothers were deceased. The Long brothers were involved in a serious vehicle accident in 2009, and both men suffered injuries. Then, in 2010, the Long brothers purportedly signed documents prepared by Bonebrake conveying a present fee simple interest in their farmland and all their equipment to Steven without consideration.

We agree with the district court that even considering all the disputed inferences from the facts in favor of the Porubskys, the record reflects the Defendants possessed "reasonable ground[s] for suspicion" to initiate and maintain the underlying lawsuit. See *Nelson*, 227 Kan. at 277. That the Porubskys ultimately prevailed when the case was submitted to the jury does not negate the existence of probable cause. Because the Defendants acted with probable cause, the Porubskys' claim for malicious prosecution fails as a matter of law, and we need not address the issue of whether the Defendants acted with malice. See 227 Kan. at 276. We also need not reach the Longs' defense of reliance on the advice of counsel. We conclude the district court did not err in granting summary judgment for the Defendants on this claim for the reasons stated in its decision.

As an alternative argument, the Attorneys assert that this court should adopt the "prevailing view" that the denial of dispositive motions in the underlying lawsuit establishes probable cause as a matter of law precluding the Porubskys' malicious prosecution case. The Attorneys made this argument in district court in support of their summary judgment motion, but the district court did not rely on this ground in granting summary judgment. In a reply brief, the Porubskys assert there is not a prevailing view that the denial of dispositive motions in the underlying lawsuit establishes probable cause as a matter of law precluding a malicious prosecution case, but they do not otherwise challenge the reasoning supporting the Attorneys' argument.

In support of their argument, the Attorneys cite *Havilah Real Property Services, LLC v. Early*, 216 Md. App. 613, 88 A.3d 875 (2014), a case very similar to our facts. Havilah Real Property Services, LLC sued an attorney and his law firm alleging that the attorney conspired with a former client of the LLC to file a frivolous lawsuit against Havilah, thereby engaging in malicious use of process. The Maryland circuit court judge dismissed Havilah's complaint with prejudice, and Havilah appealed. On appeal, the record showed that Havilah had sought to terminate the underlying lawsuit through a motion for summary judgment and two motions for judgment during the trial, all of which were denied. But after a 14-day trial, the jury found that Havilah was not liable on any of the counts. In evaluating whether the attorney had probable cause to file the underlying lawsuit, the Maryland appeals court observed:

> "Although no Maryland cases have considered whether rulings on motions for judgment have any bearing on a later determination of probable cause, case law of other states sheds some light on the issue. The states that have considered the question generally fall into two camps, with the dividing line being whether a prior ruling is just one factor to consider in a probable cause evaluation or whether it creates a presumption of probable cause." 216 Md. App. at 626.

13

The *Havilah* court aligned itself with the second camp and held "that the denial of a motion for judgment 'is a sound indicator of probable cause' that 'normally establishes there was probable cause to sue, thus barring' a subsequent malicious use of process suit." 216 Md. App. at 632. The court concluded that "Havilah has not rebutted the presumption of probable cause that those denials afford to the underlying lawsuit and thus, as a matter of law, cannot now establish that the Maryland action was initiated without probable cause. We therefore affirm the judgment of the circuit court." 216 Md. App. at 632.

In reaching its decision, the *Havilah* court adopted the position of courts from California, Georgia, and Pennsylvania. See 216 Md. App. at 627-28 (citing *Roberts v. Sentry Life Ins.*, 76 Cal. App. 4th 375, 90 Cal. Rptr. 2d 408 [1999]; *Davis v. Butler*, 240 Ga. App. 72, 522 S.E.2d 548 [1999]; *Meiksin v. Howard Hanna Co.*, 404 Pa. Super. 417, 590 A.2d 1303 [1991]). But the *Havilah* court noted this view has been rejected in Arizona and Kentucky. See 216 Md. App. at 626-27 (citing *Chalpin v. Snyder*, 220 Ariz. 413, 207 P.3d 666 [Ariz. Ct. App. 2008] [because ruling on motion for summary judgment required all inferences be resolved in favor of plaintiff, no presumption of probable cause should arise from denial of defendant's motion]; *Kirk v. Marcum*, 713 S.W.2d 481, 485 [Ky. Ct. App. 1986] [same]).

Although not mentioned by the Attorneys in their brief, the *Havilah* court also cited two federal court decisions in support of its ruling. *Havilah* cited the Eighth Circuit Court of Appeals' ruling in *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 (8th Cir. 1999), holding "the 'rejection of [the plaintiff's] motion for judgment as a matter of law . . . fatally undermines its claims for malicious prosecution.'" *Havilah*, 216 Md. App. at 627. *Havilah* also noted the holding in *Nobelpharma Ab. v. Implant Innovations, Inc.*, 930 F. Supp. 1241, 1255 (N.D. Ill. 1996), that "[t]he denial of a motion for summary judgment showed that the suit could not have been 'objectively baseless,'" precluding a subsequent antitrust claim. *Havilah*, 216 Md. App. at 628.

14

We find the reasoning in *Havilah* is persuasive. As applied to our facts, the Longs sued the Porubskys to set aside the transfer of farmland and equipment from the Long brothers to Steven, alleging a lack of mental capacity and undue influence. The Porubskys sought dismissal of the lawsuit through a summary judgment motion the district court denied. At trial, the Porubskys moved for judgment as a matter of law at the close of the Longs' case-in-chief and at the close of all the evidence. The district court denied both motions and submitted the case to the jury.

By denying the dispositive motions, the district court implicitly found that probable cause existed to support the Longs' claims. Consistent with the holding in *Havilah*, the denial of the dispositive motions in the underlying lawsuit established a presumptive bar to a subsequent lawsuit for malicious prosecution. The Porubskys came forward with no evidence in the summary judgment pleadings to rebut this presumption. Although the district court did not rely on this ground in granting summary judgment for the Defendants on the malicious prosecution claim, we conclude this analysis provides an alternative basis to affirm the district court's judgment.

*Abuse of Process*

The Porubskys also claim the district court erred in granting summary judgment on their abuse of process claim. The district court found no evidence of improper use of legal process or improper or ulterior motive on the part of the Defendants to support the Porubskys' abuse of process claim. The Porubskys assert that disputed material facts should have precluded the district court from granting summary judgment on this claim.

The elements of a claim for abuse of process are:

(1) That the defendant made an illegal, improper, or unauthorized use of the process;

(2) That the defendant had knowledge of the illegal, improper, or unauthorized use of the process;

(3) That it was done for the purpose of harassing, causing great inconvenience, or causing great hardship to the plaintiff; and

(4) That the plaintiff sustained damage as a result.
PIK Civ. 4th 127.80 (2018).

To support their argument on their abuse of process claim, the Porubskys offer the following assertions without further explanation, supporting authority, or citation to the record on appeal:

"The Plaintiffs alleged that the purpose of the lawsuit was to intimidate and harass Plaintiffs into returning the land deed [*sic*] to them by the Long brothers. The evidence on this claims [*sic*] included threatening and disparaging letters sent to Plaintiffs' landlords and business suppliers. The locks were changed on the gates to the property that denied and impeded Plaintiffs access to the property they owned. The Plaintiffs were forced to defend an expensive and lengthy lawsuit which was without merit from the beginning."

We find the Porubskys' argument on their abuse of process claim to be inadequately briefed and therefore waived or abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). In any event, as the Attorneys argue in their brief, the Longs, through their attorneys, sued the Porubskys under valid legal theories seeking to set aside the transfer of real and personal property. The Porubskys have come forward with no evidence that the underlying lawsuit was brought for any reason other than the claims that went to the jury. The court's process was not abused, and the district court did not err in granting summary judgment on the abuse of process claim.

Affirmed.